Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142



### UNITED STATES DISTRICT COURT

### NORTHEN DISTRICT OF CALIFORNIA

JANE ROCIO EVANS

      Plaintiff

Case Number: C08-0944 EMC (BZ)

**CASE MANAGEMENT CONFERENCE STATEMENT**

v.

ASIAN AMERICAN RECOVERY SERVICES

      Defendant(s)

### I.    **JURISDICTION AND SERVICE**

Plaintiff's claims: Plaintiff has not yet been paid wages fro Spanish Speaking client services, as well as case management with Latino clients, when co-worker Jose Arinez was paid for these services. Defendant thus has intentionally violated wage discrimination law. **EXHIBIT 1: Marriage, Family Therapist license printout from the Board of Behavioral Sciences legal website, which verifies that Plaintiff is a Licensed clinician, and that thus Defendant intentionally failed to acknowledge and validate her professional Title at AARS PAES program and throughout the entire organization, with these facts and exhibits: EXHIBIT 2:** Defendant List of Titles and names of employees in PAES program, a most important document, as it verifies that Defendant validated the title of Caucasian co-worker, Jessica Katzman, who on this sheet

Number: CV-08-0944                                              Page 2

 is given her correct title 'Dr. Jessica Katzman' Plaintiff, on the other hand, is incorrectly

not given a Title at all on this sheet, which is Marriage, Family Therapist. This sheet was

intentionally printed this way, as Plaintiff gave a copy of her Professional License, in

front of witness Arthur Henry, at a meeting with Human resources representative Doris

Lan present, in order to sign paperwork to become employed. Ms. De Leon was also

aware of Plaintiff's professional License status before Plaintiff was hired. Plaintiff's

Title was not acknowledged in this organization when Caucasian employees Katzman,

Trevor Graham, and Dr.. Robert Liss's Tittles are also validated on this page. Plaintiff is

of Mexican descent, born in Mexico City, has a United States passport to verify this,

Spanish being her first language, and has a birth certificate to verify that this Mexican

projected status exists. Thus Defendant intentionally acknowledged and validated the

titles of 3 Caucasian employees, and failed to validate and acknowledge Plaintiff's Title.

**EXHIBIT 3: Transcripts from Lesley college, in which Plaintiff's G.P. A. was 3.67.**

**Plaintiff endured most disrespectful and insulting comments from co-workers such**

**as John, who communicated to her that: " Just because you are licensed doesn't'**

**mean you are competent' EXHIBIT 4: Letter, 2 pages, dated:  June 15, 2007,**

**written by Anke Gleber, Ph. D. which highly and strongly recommends Plaintiff as**

**having strong team player abilities with other co-workers at Logan Heights Family**

**Counseling Center, San Diego.  EXHIBIT 5:** 2 pages. Employee Performance

Evaluation from Walden House, dated: March 16, 2005, which rates Plaintiff's

employment performance as nearly superior, that of a 4. 45 rating. Plaintiff is given a

rating of 5: excellent, in terms of her 'Cooperation and Team spirit," Ability to work in harmony and effect on agency Morale." This strong evidence validates that Plaintiff did not have personal co-worker issues with Graham, Liss, Katzman orLangenbach, that these were racial discrimination and hostile attacks from these individuals towards Plaintiff at AARS. Employment performance Evaluation needs to be rewritten on the part of De Lynda de Leon, with certain statements validated, such as Plaintiff completed work tasks, especially paperwork, Treatment Plans, on a Timely basis, about 17 days, when state law requires that treatment Plans be completed in 60 days. Plaintiff completed all tasks, which she was trained to do n a timely basis, except for some last paperwork on which she was never trained to do by Trevor Graham.

**EXHIBIT 6: employee performance Evaluation from AARS, which shows that THIS FACT IS BEING INTENTIONALLY MISREPRESENTED ON THIS evaluation. Plaintiff WAS NOT LATE IN SUBMITTING THIS WORK. Evaluation HAS A THEME OF LATENESS IN TERMS OF Plaintiff's WORK PERFORMANCE IN THE BODY OF IT, FALSELY MISREPRESENTING Plaintiff AS A LATE OR SLOW CO-WORKER. Plaintiff IS CLAIMING THAT THESE RACIALY DISCRIMNATORY STATEMENTS ARE COMING FROM CULTURAL STEROTYPES ABOUT Mexicans IN THE united states, SUCH AS THE ONE MADE ABOUT Mexican CO-WORKERS;' you're NOT Speedy GONZALES."** Plaintiff is requesting and insisting that De Leon, Trevor Graham, Jessica Kaztman, John Andonakakis and Carrie Langenbach be mandated and required to attend cultural trainings on the Mexican American population.

2. Facts: poor work evaluation given unjustified. Professional Marriage, Family
Therapist license not paid for by PAES program at Defendant's company, when it was
paid to other professionals in other programs in the Asian American recovery services
organization. Professional letter of reference and telephone professional reference not
given to plaintiff by Ms. De Leon, when ms. De Leon gave employee reference to Bruce
Chatfield, Caucasian male administrative employee of AARS PAES program. Thus,
Chatfield was treated in a differentially better manner than Plaintiff, based on race, as
Plaintiff is Mexican and Chatfield is Caucasian. Chatfield also frequently played
computer solitaire on Fridays at the office instead of attending to his work duties.
Plaintiff wrongfully accused of fraud by manager David of this company. Letter of
apology needs to be given for this. **EXHIBIT 7: Employee Performance Appraisal, 3
pages.** Plaintiff has refused up to this date to sign this evaluation, as she states to this
Court that it is grossly unfair, especially in light of prior evaluations, which she has now
given evidence to this Court of. RAMS CEO Kavoos Bassiri communicated to Plaintiff
'Your work references are excellent,' Around May 29th, 2007. This evaluation states this
racially discriminatory fact from Defendant" However, she has struggled with
interpersonal relationships among a few of her co-workers, which I believe has impacted
her potential with PCS." These are not interpersonal struggles, but rather hostile attacks
from Caucasian AARS employees and Managers which have been racially discriminatory,
and which plaintiff has asserted her first amendment free speech rights with. This is a
grossly unfair and incorrect assessment on the part of Ms. De Leon, and Plaintiff is
seriously alarmed at what ms. De Leon means when she wrote,' this has impacted her

Case No: Co8-0944

Page 5

potential within PCS.' Judgment is only given a rating of 2, and this is a gross racial discrimination on the part of graham and Ms. De Leon. Plaintiff used good judgment in imitating a meeting to address concerns with co-workers and Managers. Ms. De Leon failed to write an incident report and to reprimand employee Ryoko for tardiness policy at SURI< as regards Ms. RYOKO's discrimination of a Mexican client. This is what the issue in the very low rating of 2 concerns, de Leon's unintentional hiding of Ryoko's Mexican client racial discrimination by scapegoating Plaintiff by stating in Plaintiff's evaluation that she did not show good judgment concerning this situation. Ryoko harshly stated to a client that he could not attend the Substance Abuse group because he was 3 minutes late to this group. No such tardiness policy exists for any client. Plaintiff communicated to Supervisor's that Ryoko's conduct regarding this matter was harsh and that client had complained regarding racial discrimination of Ryoko.  No action was taken by Defendant mangers to address to reprimand Ryoko. **EXHIBIT 8: 2 pages. Therapist job description of AARS. The salary range for this position is: $48,000-$52,000 the salary which is appropriate fro Plaintiff. Plaintiff is thus claiming that Defendant owes her $54,000, salary an additional $2,000 added to the $52, 000 for** Plaintiff **being Bilingual/Bicultural in Spanish. Plaintiff knows that the top level amount is an appropriate salary for her, as she has at least 11 years of experience working clinically with clients. On this page, it states;"$48,000-$52,000 p.a. (License with over 2 years experince) Exempt.** Plaintiff can verify through her MFT License, which she received on June 7, 2004, that she has over 2 years of experience post license. This Family Therapist position is given in the same organization; therefore it is applicable to Plaintiff. Bassiri stated to AARS employees that it is one organization, therefore all of the Salaries need to be congruent with this. **EXHIBIT 9: Job description of Senior Counselor I for AARS, 2 pages.** On this page it states: Reports to: License clinician and or designate.' Thus, this verifies that the senior I Counselor Position given to Plaintiff is legally incorrect, and that thus HR director Mary Chemung has grossly neglected to do her legal duty by placing Plaintiff in the incorrect salary grade with the incorrect Job Title. This later became intentional on the part of Ms Chung, as Plaintiff asked that her Senior I Title be changed to that of Therapist, after she heard Bassiri explain at a staff meeting that a licensed therapist cannot legally be given the title of counselor.  Ms. Cheung refused to change this Job Title, therefore proving that this racial discrimination is intentional, since Graham and Less did not suffer the incorrect job Title or salary grade. **EXHIBIT 10: Earnings statement which verifies that Plaintiff only received $20. 4981 an hour salary rate.**

2. Facts: De Leon intentionally broke Confidentiality and intentionally defamed Plaintiff to RAMS CEO Bassiri. She thus treated Plaintiff in a differentially worse manner than Katzman and Langenbach and Chatfield, all of who are Caucasian and whom she did not break Confidentiality with concerning these employees professional reputation. Co-worker Queenette Nsima is a witness to the fact that Ms. De Leon did not defame Katzmans' reputation. She was present, standing Next to Evans when Bassiri told Katz man: 'I've heard very positive things about you.' Nsima is also a witness that De Leon broke Confidentiality regarding African American employee Henry Arthur's employee performance. This is in direct violation of employee law. Nsima communicated to Plaintiff: 'Arthur (Henry) knew he wasn't going to get hired at RAMS." Plaintiff has an e-mail as an exhibit that verifies that Confidentiality regarding Plaintiff and defamation of Plaintiff had occurred to Bassiri and that Bassiri was harassing Plaintiff as a result of this defamation. De Leon broke Confidentiality and defamed Plaintiff intentionally when she communicated to a Paes Counselor that Evans 'is crazy." Arinez is a witness that De Leon communicated this to one of the Counselors, who then communicated this to him He communicated this defamation to Plaintiff, complying with this legal duty to do so, around the last week of June 2007. He said that he did not believe Evans was crazy. He also communicated during this conversation with Evans that he was getting paid for being Spanish Speaking. De Leon also communicated to Evans around May 29th that AARS had offered Katzman severance pay or a money package of $4,000 if she were not to get hired by RAMS. De Leon never offered Plaintiff this equal amount of severance money, even though she knew that Plaintiff was undergoing financial hardship and was at

risk for homelessness if RAMS did not hire her. This is racially discriminatory towards

Plaintiff, and differentially better treatment towards Katzman, who is Caucasian.

Defendant Manager David acknowledged during a staff meeting that' it is my fault that

we lost this contract to RAMS.' Therefore Defendant was responsible for giving

Severance money not only to Plaintiff, but also to Liss, Graham and De Leon, who also

did not get hired by RAMS. These individuals are all due severance money plus triple

Damages for not getting this money at the time, if any of these individuals were not given

 Their Severance money. Discovery needs to take place around this. **EXHIBIT 11:** E-

mail sent from Doris Lan, HR Generalist, dated: February 26, 2007. verifies that HR

asked for resume and that Plaintiff sent resume to Defendant, thus Defendant was aware

of Plaintiff's license number and Bilingual Spanish speaking ability. **EXHIBIT 11(a): 8**

**pages. Interview of Plaintiff by Mary Cheung, HR Director: dated: June 6, 2007.**

Statement made at the time by Plaintiff that Katzman defamed Plaintiff's reputation by

stating at a staff meeting that Plaintiff's not a good team player." Andonakakis, a

Caucasian male employee, intentionally defamed and slandered both Plaintiff and

Henry's professional reputation by communicating at a staff meeting;" We haven't been a

team since Rocio and Arthur got here." Thus Henry continues to be a set to the

defamation that also occurred with Plaintiff. **EXHIBIT 12: E-mail sent to Plaintiff and**

**De Leon from Trevor Graham, dated: April 13, 2007, 1 page.** Confirms that a meeting

was scheduled for Graham, Katzman, Liss, and Langenbach in order to discuss hostile

attacks of Katzman and Langenbach towards Plaintiff. Both Liss and Graham

intentionally excluded De Leon from this meeting. This is an example of their racially

Case Number: Co8-0944                              Page 8

discriminatory behavior towards her, and their attempt to hide the racial discrimination

that was occurring from both of these employees. **No administrative assistant was**

**present at this meeting in order to take notes, even though Administrative assistants**

**regularly took notes at meetings. EXHIBIT 13(a): E-mail that Plaintiff sent to**

**Langenbach, dated: June 22, 2007.** Plaintiff never received a response to this e-mail

and Langenbach never took the time to consult with Plaintiff regarding this client, even

though both Plaintiff and Langenbach saw this client for counseling sessions.

Confidentiality of client has been protected by not naming last name of client. This is

another example of the hostility and racial harassment that Plaintiff continued to suffer

from Langenbach, which was painful to Plaintiff. Langenbach, to Plaintiff's

understanding, was never reprimanded for her severe level of hostility towards Plaintiff.

**EXHIBIT 14: E-mail sent to all AARS employees by Chung, dated: April 20, 2007**

E-mail verifies that AARS employee retreat occurred on May 7, 2007. during this

meeting, Plaintiff talked with the new therapist who had been hired for the South San

Francisco AARS program, which Plaintiff had applied for and had never been

interviewed for. Evidence of hostility and retaliation that Plaintiff's professional

reputation had been defamed and Blacklisted to this AARS Manager. Plaintiff submitted

her resume and was never called in for this interview. This manager hired a Caucasian

Intern therapist instead who was not licensed at the time, an MFT Intern. This Intern

encouraged Plaintiff to communicate with Human Resources her experience of being

Harassed by Graham. She communicated this referral to Plaintiff during the May 7, 2007

Meeting. **EXHIBIT 15: letter mailed from Chung to plaintiff, dated: August 9, 2007,**

**5 pages.** Letter re: Complaints. In this letter, Chung states that 'Based on investigative

findings, we concluded that there is insufficient evidence to support your allegations

against Jessica. " There were witnesses for Jessica's slander, a room full of clinicians

who heard Katzman tell everyone else that Plaintiff 'was not a good team player." This is

sufficient evidence. Plaintiff is thus alleging that this investigation is not fair. She e-

mailed Chung, asking for an appeal to these findings and that Chung reinvestigate these

matters again. Chung refused to do so, thus intentionally grossly neglecting to do her

legal duty. Chung's reason to Plaintiff at the time was:' The EEOC is already conducting

an investigation of this." **EXHIBIT 16: E-mail from Graham to Evans, dated: June**

**20,2007, 1 page.** Evidence that Confidentiality was been violated concerning Plaintiff to

Bassiri, as stated in e-mail, most likely defamation about Plaintiff not completing work

duties, including Treatment summaries which Plaintiff was in the process of completing

and attending to responsibly at this time. **E-mail text read: "Rocio will be providing**

**you with a treatment summary as Kavoos requested." EXHIBIT 17: E-mail sent to**

**Plaintiff from Doris Lan, 1 page, dated: April 11, 2007.** In this e-mail, Lan writes:"

Yes, you can go ahead and apply for the therapist position, but let Sunjung know that you

are a current AARS employee too.' Plaintiff applied by sending resume, which Sunjung

received. Sunjung never called in Plaintiff in for an interview, even though Plaintiff is

highly qualified and has many skills. **Exhibit 19: E-mail to Plaintiff from De Leon, 1**

**page, dated: June 26, 2007.** This e-mail verifies that a meeting was scheduled with

Chung, De Leon and Plaintiff. In the body of this e-mail, Plaintiff asks what the purpose

of this meeting with Chung is. De Leon responds: " Mary wasn't specific." Plaintiff's

Case Number: Co8-0944                    Page 10

hypothesis is that this was illegal Human Resources meeting, since Chung did not bring

any paperwork to this meeting. Plaintiff's understanding of this meeting is that it was a

meeting to investigate and audit Plaintiff, in retaliation for her having engaged in

protected activity by complaining about Graham and Liss, **in particular that Liss had**

**recommended that Plaintiff be Terminated a few weeks after she arrived at AARS.**

Susan Chon, employee, is a witness to this recommendation from Liss. Plaintiff

communicated to Chon at the time this was occurring that De Leon had communicated

Liss's recommendation to her and that De Leon had said no to this. Plaintiff experienced

this meeting as harassment from HR and was afraid that she was going to be Terminated

by HR during this meeting. She suffered this fear, particularly since De Leon was

secretive about the purpose of this meeting before going into it. **EXHIBIT 20: Note**

**from Chung, dated: June 22, 2007, 1 page.** In this note, Chung writes;" You have

already signed the first one, but I made a change on the Job Title to SR. counselor I."

Evidence that HR is still not validating or acknowledging Therapist Job title of Plaintiff.

Plaintiff brought in more billing money to organization whenever she billed as a licensed

vs. an unlicensed clinician. De Leon also communicated to Plaintiff that as a licensed

therapist,' You validate the Funding.' **Exhibit 21: E-mail from Plaintiff to Graham, 1**

**page, dated: June 8, 2007. In this e-mail, Plaintiff writes: " Trevor… could you**

**please clarify the statement, it's the way you write things up?'** Plaintiff experienced

Graham's verbal attack of her work as harassment and understand assumed that he was

**accusing her of falsification of record** during one of the consultation sessions. Graham

refused to acknowledge or validate Plaintiff's Title by calling these sessions' Supervision

sessions,' when they were Consultation sessions. Graham also intentionally lied to
Department of Human Services manager by communicating to her that on June 28, 2007,
he had called Security on Plaintiff for being disruptive. Plaintiff called security on
Graham for his harassing her by signing for her treatment Plans and assessments, which
was highly painful and distressing to Plaintiff, in front of her. Graham refused to
acknowledge her professional license by signing for these documents, thereby treating
her as an intern or student. Nsima is a witness that this was painful for Plaintiff.

**LEGAL ISSUES**

**Wage discrimination law violated.  Confidentiality labor laws violated.**

Defamation and Blacklisting to AARS Manager Sunjung and RAMS CEO Bassiri.
Plaintiff not paid for her MFT license. Plaintiff not given severance money.
Performance evaluation intentionally falsified, fraud regarding this. Professional
telephone and written reference not given to Plaintiff.

**MOTIONS**

**Motions:** For confidentiality law to be observed and respected.  For wage
Discrimination law to be adhered to. Letter of reference written by De Leon and
signed by manager David. New employment evaluation written by De Leon. For
Plaintiff to be paid for her Therapist license and to be given severance money, plus
Triple damages.  For statement to be written by Defendant that Plaintiff will no
longer

be referred to as 'crazy,' by De Leon.

Case Number: C08-0944                               Page 12

## EVIDENCE PRESERVATION

Defendant does not give consent that evidence be destroyed in any document
destruction program, except for her performance evaluation. Defendant
requests that this evaluation be sealed and destroyed, since it is fraud.

## DISCOVERY

That discovery takes place regarding Bassiri's statement of Plaintiff in e-mail.
For HR to reinvestigate matter concerning initial allegations of Plaintiff,
interviewing appropriate witnesses. For Nsima to be interviewed regarding
witnessing suffering of Plaintiff regarding calling security on Graham. For
Keow, employee, to be interviewed regarding Graham authorizing harassment
of Plaintiff by asking Keow to ask her repeatedly if she had completed her
assessments. For Board of Psychology to be contacted, enforcement unit
regarding licensed individuals being able to sign their own treatment plans and
assessments, in order to clarify matter that Plaintiff was not being insubordinate
in requesting this. For matter of racial harassment of Henry and defamation to
be thoroughly investigated by HR by investigating all clinical staff and
administrative assistants. For Tila to be interviewed regarding Katz man's
hostile comments.

Case Number: C08-0944                           Page 13

**CLASS ACTION**

This is not a class action

**RELATED CASES**

There are no related cases or proceedings pending

**RELIEF**

Asking for $40,000 worth of monetary relief for damages and serious harm
caused.

**SETTLEMENT**

Plaintiff is willing to cooperate with Defendant regarding receiving a settlement,
which would be fair, considering harm caused.

Dated: August 12, 2008                 Respectfully,

                                        Jane Rocio Evans,

                                        Licensed Marriage, Family Therapist

# Search Results for Licensees and Registrants

**This information is updated Monday through Friday - Last updated: JUN-08-2008**

**To see all the information for a licensee, click on the highlighted name. This will also include administrative actions if any are present.**

| Name | Type | Number | Status | Address | City | Zip | County |
|------|------|--------|--------|---------|------|-----|--------|
| EVANS ROCIO | MFC | 40689 | CLEAR | PO BOX 424886 | SAN FRANCISCO | 94142 | SAN FRANCISCO |

Record 1

First Previous

### Disclaimer
*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

[ Back ] [ Return to Main License Listing ]

# Board of Behavioral Sciences

1625 North Market Boulevard, Suite S 200
Sacramento, CA 95834
Main Line Phone Number: (916) 574-7830

## Licensee Information

**Licensee Name:** EVANS ROCIO
**License Type:** MARRIAGE AND FAMILY THERAPIST
**License Number:** 40689
**License Status:** CLEAR Definition
**Expiration Date:** May 31, 2010
**Issue Date:** June 07, 2004
**Address:** PO BOX 424886
**City:** SAN FRANCISCO
**State:** CA
**Zip:** 94142
**County:** SAN FRANCISCO
**Actions:** No

## Related Licenses/Registrations/Permits

| Number | Name | Type | Status | Actions |
|---|---|---|---|---|
| 35837 | EVANS ROCIO | INTERN - MARRIAGE AND FAMILY THERAPIST | CANCELLED | No |

## Public Disclosure

No information available from this agency

**This information is updated Monday through Friday - Last updated: JUN-08-2008**

*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of*

*this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back

# PAES COUNSELING SERVICE
## 1235 MISSION STREET, SUITE 200
## SAN FRANCISCO, CA 94103

(415) 558-1320          FAX (415) 558-4705

Revised 03-28-07

| | | | |
|---|---|---|---|
| Program Manager | **DeLeon, DeLynda** | U7 | Ext. 81327 |
| Clinical Supervisor | **Dr. Robert Liss** | U760 | Ext. 81380 |
| Clinical Supervisor | **Dr. Trevor Graham** | U7 | Ext. 81327 |
| Senior Counselor | **John Andonakakis** | U761 | Ext. 81353 |
| Senior Counselor | **Susan Chon** | U762 | Ext. 81319 |
| Senior Counselor | **Rocio Evans** MFT | U7 | Ext. 81341 |
| Senior Counselor | **Arthur Henry** | U7 | Ext. 81308 |
| Senior Counselor | **Kamtha Keow** | U774 | Ext. 81378 |
| Senior Counselor | **Dr. Jessica Katzman** | U772 | Ext. 81347 |
| Senior Counselor | **Dr. Helen Martin** | U767 | Ext. 81333 |
| Senior Counselor | **Ryoko Moriguchi** | U768 | Ext. 81391 |
| Senior Counselor | **Queenette Nsima** | U771 | Ext. 81379 |
| Senior Counselor | **Carrie Langenbach** | U764 | Ext. 81397 |
| Senior Counselor | **Patricia Ramos** | U7 | Ext. 81325 |
| Administrative Assistant. | **Tila Leibowitz** | U76A | Ext. 81395 |
| Administrative Assistant | **Bruce Chatfield** | U77A | Ext. 81320 |

Jose Arinez, E.S.                      558- 1326

Exhibit 2

**LESLEY**

Cambridge, Massachusetts 02138-2790          06/27/96      Ms. Rocio Evans
                                                           21 Hews, Apt. 3
                                                           Cambridge, MA 02139

PAGE 1 OF 1

STUDENT NUMBER: 0193850     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

DATE ADMITTED: 93/U1

DEGREE:MAC   Master of Arts in Counseling Psychology          REQUIREMENTS COMPLETED: 06/19/95   CONFERRED: 11/17/95
PROGRAM:LM   Graduate School of Arts & Social Sciences Master
LOCATION:MC  Main Campus
  MAJOR:3600 Counseling Psychology

MINOR:

SPECIALIZATION:

CERTIFICATION:

SECONDARY SCHOOL:
GRADUATION YEAR:

UNDERGRADUATE INSTITUTION: SAN DIEGO STATE UNIVERSITY
DEGREE CONFERED: Bachelor of Arts
DATE CONFERED:   5/93

| TERM | COURSE NUMBER | | COURSE TITLE | CREDITS | GRADE |
|------|---------------|--|--------------|---------|-------|
| | | | ACADEMIC YEAR 1992-93 | | |
| 93/U1 | GPSYC 6200 | 01 | Orientation/Professional Psychology | 2.00 | P |
| | | | ACADEMIC YEAR 1993-94 | | |
| 93/FA | GPSYC 6026 | 03 | Developmental Psychology Across the Lifespan | 3.00 | A- |
| 93/FA | GPSYC 6027 | 04 | Clinical Skills and the Counseling Process | 3.00 | P |
| 93/FA | GPSYC 6201 | 01 | Issues and Standards in Professional Psychology | 3.00 | A- |
| 93/FA | GPSYC 6300 | 01 | Theories of Holistic Counseling and Psychotherapy I | 3.00 | A |
| 94/SP | GPSYC 6007 | 01 | Psychopathology | 3.00 | B |
| 94/SP | GPSYC 6015 | 03 | Group Dynamics | 3.00 | P |
| 94/SP | GPSYC 6301 | 01 | Theories of Holistic Counseling and Psychotherapy II | 3.00 | A |
| 94/SP | GPSYC 6305 | 01 | Counseling and Spirituality | 3.00 | A |
| | | | ACADEMIC YEAR 1994-95 | | |
| 94/FA | GEXTH 6302 | 01 | Training Workshop in Psychodrama | 3.00 | P |
| 94/FA | GPSYC 6029 | 01 | Vocational Development and Career Counseling | 3.00 | B+ |
| 94/FA | GPSYC 6101 | 01 | Research Design & Program Evaluation | 3.00 | A- |
| 94/FA | GPSYC 7710 | 09 | Clinical Practice & Supervision I: Clinical Setting | 3.00 | P |
| 95/SP | GPSYC 7100 | 01 | Biological Bases of Behavior | 3.00 | B |
| 95/SP | GPSYC 6030 | 02 | Gender, Race & Ethnicity in Counseling | 3.00 | A |
| 95/SP | GPSYC 6205 | 01 | Assessments for Counseling and Psychology: Adults | 3.00 | A |
| 95/SP | GPSYC 6211 | 01 | Professional Integrative Seminar | 3.00 | P |
| 95/SP | GPSYC 7711 | 09 | Clinical Practice & Supervision II: Clinical Setting | 3.00 | P |

CUMULATIVE CREDIT:   CRED ATT  51.00     CRED CMPLT  51.00     CRED CALC  33.00     GRADE PTS 121.20     GPA  3.67

END OF TRANSCRIPT

*Exhibit 3*

**RAVENSWOOD CITY SCHOOL DISTRICT**

Mailing Address: 2120 Euclid Avenue, East Palo Alto, CA 94303
Phone #: (650) 329-2800 – Fax #: (650) 323-1072
**Substitute Line - Phone #: (650) 323-9418**

15 June 2007

To Whom It May Concern:

    I am writing this letter in order to provide a reference for Ms. Rocio Evans, M.A., MFT, who is currently seeking employment as a licensed Marriage and Family Therapist with your organization. I have known Ms. Evans for about seven years now, having first worked with her as a bilingual and group therapist from early 2000 until the end of 2002. During the time I was employed as a licensed MFT at the Spring Valley branch of Family Health Centers of San Diego (FHC), and was introduced to Ms. Evans, an MFT intern at that time, in the context of group supervision and regularly scheduled staff meetings in the organization. I have actively cooperated with Rocio in the preparation of her licensing exams during that time, as well as during clinical consultations for specific cases that she was assigned to during those years.

    In this context, I have been able to form a thoroughly positive impression about the qualities of Ms. Evans' clinical skills as both a group and individual therapist. I have further been able to witness her many apparent personal as well as interpersonal skills, during multiple staff and supervision meetings and case consultations, where she often served as a team leader and resource therapist with specific areas of expertise beyond the scope of other therapists of similar training. These included Rocio's ability to provide therapy and groups in Spanish to our many bilingual clients, as well as conduct both trainings and therapy sessions also involving Sandtray therapy, which she diligently pursued as one of her therapeutic specializations through additional coursework and supervision.

    Through her clinical skills and respectful manner, as well as her friendliness and manifest personal skills, Ms. Evans finds it easy to relate to and build rapport with both her coworkers and the clients whom she serves as a licensed bilingual therapist. During her time at FHC, I have known Rocio to always being active and highly productive, in regard to both the quantity of her caseload in individual and group therapy, as well as in the high quality and ethical, effective delivery of therapeutic services and interventions. Ms. Evans has consistently been known to being able to provide the most appropriate services for her clients and groups, and serve both our English-only and bilingual clients at FHC in a professional manner throughout her tenure at that organization.

    I was always aware that Rocio Evans performed as an effective team player at FHC, maintaining appropriate friendships and cordial relations with her fellow interns, staff, and employees. Among her peers, she was frequently sought out as a respected voice in personal and professional matters, providing a focal point for an intern group that was generally characterized by a supportive and helpful atmosphere. Ms. Evans's work and good standing at Family Health Centers of San Diego was distinguished further through a generous grant she received from the organization, allowing her to provide therapeutic materials and support for her training in Sandtray Therapy, including a specialized conference in Portland, OR, which overall constituted a highly unusual

*Exh. #24*
*page 1*

acknowledgment of professional and personal merits, especially for the pre-licensed intern therapist she was at the time.

Throughout the years that I have known Ms. Evans, she has been an exemplary and most helpful colleague to me, always eager to share her resources and expertise with others. She was a well-liked intern at the Logan Heights branch of FHC in San Diego of long-term good standing. I have known Ms. Evans to consistently provide therapy and consultations at the very high levels of her clinical and personal skills. In addition to her specialization in Sandtray and Play Therapy with children and school-age clients, she has demonstrated further strengths in working with diverse client populations, groups and individuals impacted by domestic violence, abuse, and other manifestations of traumatic exposure leading to depression, anxiety, and adjustment disorders. Most recently, Ms. Evans has successfully worked in the field of substance abuse treatment, by providing both group and individual therapy at a non-profit organization in San Francisco specializing in these areas.

In my opinion and that of the many other professionals that I have worked with at FHC, Ms. Evans has always done an outstanding job responding to the high levels of need of those seeking her expertise as a therapist, while also managing a demanding work assignment. Going above and beyond the call of her tasks, Rocio appeared to never mind being of assistance to our clients and professional colleagues. She does seem to genuinely enjoy working with others, so that her assistance has been appreciated by everyone who had professional contact with her as a therapist and counselor. Through her patience and tact as well as her multiple linguistic and intercultural skills, Ms. Evans relates and works well with others, including individuals from a wide range of backgrounds.

I am therefore very confident that Ms. Evans would be able to make a strong and constructive contribution to your or any other organization that seeks a dedicated and exceptional therapist to fulfill those functions. I recommend Ms. Evans to you most highly and without any reservations whatsoever, as a Marriage and Family Therapist of exceptional skills and qualifications, whom I have known to demonstrate a consistently high level of clinical skills and commitment to her work with both clients and colleagues. Please do not hesitate to contact me if I should be able to provide any further information.

Sincerely yours,

Anka Gleber, Ph.D., MFT #38404
Ravenswood City School District

Exhibit 4,
page 2

# EMPLOYEE PERFORMANCE EVALUATION

EVALUATION DATE: __3 | 16 | 05__     EMPLOYEE NAME: _ ROCIO EVANS_

HIRE DATE: __12 - 4 - 03__     POSITION: __M. H. Therapist__

## SECTION 1 – GENERAL PERFORMANCE RATING:

1 = POOR    2 = SUBSTANDARD    3 = STANDARD    4 = ABOVE AVERAGE    5= SUPERIOR

| AREA | 1 | 2 | 3 | 4 | 5 | NOT APPLICABLE |
|---|---|---|---|---|---|---|
| **QUALITY OF WORK** Performance in meeting established standards accurately and effectively. | | | | ✓ | | |
| **QUANTITY OF WORK** Output of satisfactory work, efforts to improve effectiveness/efficiency. | | | | ✓ | | |
| **JOB KNOWLEDGE** Adequacy of all aspects of job and related self-development. | | | | ✓ | | |
| **INITIATIVE** Ability to work without supervision; resourcefulness. | | | | | ✓ | |
| **WORK ATTITUDE** Enthusiasm and interest in work. | | | | | ✓ | |
| **COOPERATION AND TEAM SPIRIT** Ability to work in harmony and effect on agency morale. | | | | | ✓ | |
| **ATTENDANCE** Regularity of attendance and punctuality. | | | | | ✓ | |
| **DEPENDABILITY** Acceptance of responsibility, follow through of assigned tasks. | | | | | ✓ | |
| **JUDGMENT** Correctness of decisions and logic; exercising discretion. | | | | ✓ | | |
| **LEARNING ABILITY** Speed and thoroughness of familiarizing, learning new tasks. | | | | | ✓ | |
| **WORK HABITS** Organization, thoroughness, timeliness and neatness. | | | | ✓ | | |
| **LEADERSHIP AND MANAGEMENT** (If applicable) Ability to guide and direct subordinates and manage resources. | | | | N/A | | |
| TOTAL checks in each column: | | | | 1 | 2 | 8 Do not count checks in this column |
| Multiply score for each column: | X1 | X2 | X3 | X4 | X5 | |
| TOTAL ratings for each column and add them up: | | | 1 | 8 | 40 | Total → 49 |

Divided by the number of checks: 11

Total score: 4.45

Exhibit 5, Page 1

# SECTION 2 – NARRATIVE

ENERAL COMMENTS: Rocio is An Exceptional Staff Member who has been able to come to clinical tasks a training, And effectiveness That has helped him to a Stronger Mental Health team

B. SUCCESS IN FOLLOWING MONTHLY PROGRESS REPORT RECOMMENDATIONS: Rocio responds Effectively and promptly

C. OVERALL EMPLOYEE GROWTH AND STRENGTHS: learning More About Health Education & this population. Being Able to facilitate 2 very needed support therapy groups.

D. AREAS NEEDING IMPROVEMENT: learning to "Speak up More" And give voice to your Experience and especiality clinical Skills,

E. FURTHER TRAINING REQUIREMENTS: Continue As Career heeds dictate -

---

# SECTION 3 – EMPLOYEE RESPONSE

This evaluation has been reviewed and discussed with me. I understand the ratings, and I understand that I need not necessarily agree or disagree. My comments are as follows:

I appreciate Frank Glhr's efforts to support my growth and progress in Walden House.

EMPLOYEE SIGNATURE: Rocio Sybone, MFT   DATE: 3-16-05

SUPERVISOR SIGNATURE: Frank C. Gehr BGD   DATE: 3/16/05

Exhibit 5, page 2



## ASIAN AMERICAN
### RECOVERY SERVICES, INC.

## EMPLOYEE PERFORMANCE APPRAISAL

| | |
|---|---|
| **Employee Name** | **Jane Rocio Evans** |
| Job Title | Senior Counselor I |
| Program/Department | PAES/PCS |
| Conducted by | DeLynda DeLeon/Trevor Graham |
| Due Date | 05/09/07 |
| Reflecting Performance From: 01/22/07 | To: 05/09/07 |

Rating Key: 5=Excellent, 4=Very Good, 3=Good, 2=Satisfactory, 1=Needs Improvement, 0=Unsatisfactory

| Factors | Rating |
|---|---|
| **Professional Performance:** Effectiveness in meeting responsibilities and requirements of job; knowledge of field, understanding and performance of one's role within the team. For managers: leadership, management and supervision. | 3 |

- Conduct assessments on clients for substance abuse and/or mental health treatment referrals. Provide individual and group counseling for clients with substance abuse and/or mental health issues. Participate in the follow-up on treatment and vocational placement status of clients, including some case management and advocacy duties.
- Follow up with clients in order to keep them engaged in substance abuse and/or mental health treatment services.
- Attend meetings, training, and conferences as required or recommended.
- Prepare and maintain required charting and documentation in a timely and thorough manner according to established HIPPA and AARS QA standards.
- Perform administrative duties including, but not limited to, data entry of client information.
- Adhere to all client confidentiality and Quality Assurance standards.
- Documentation of client services for purposes of billing and data entry.
- Position requires collaboration with County and community agencies that work with the same population(s).
- Able to work in a variety of settings including, but not limited to, County Adult Assistance Program Centers.

**Comments:**
*Although Ms. Evans has had to face challenges in her three months, she was able to meet the requirements of her job as stated above.*

**Judgment:** Discretion and confidentiality in handling information; perspective; open-mindedness; ability to discern and reason through issues.    | 2 |

**Comments:**

When it pertains to clients, Ms. Evans exercises good judgment and is able to make sound decisions. She practices and follows proper PCS/DHS/DPH confidentiality procedures in dealing and managing clients' information. She is cognizant of ethical and legal guidelines regarding clinical documentation. On the other hand, Ms. Evans has had difficulties in using good judgment when dealing with program issues. There were one or two instances that Ms. Evans should have addressed particular program procedures (concerns) with the Program Manager instead of approaching staff e.g. tardiness policy of SURI.

Exhibit 7, page 1

1. **SUMMARY OF OVERALL PERFORMANCE** (Narrative summary of employee's overall performance in the past period.)

*Although Ms. Evans has had challenges during her introductory period, she has managed to meet her responsibilities and maintain a high level of work. There is no question that Ms. Evans possesses excellent clinical skills. Once she fully understood and grasped the work of PCS, she was able to produce very good work. However, she has struggled with interpersonal relationships among a few of her co-workers, which I believe has impacted her potential within PCS.*

*An area that Ms. Evans needs to work on in order to enhance her professional development would be her computer skills. A great deal of her work could be more time efficient and professionally presentable if done on a computer e.g. timesheet, self-evaluation.*

*I've enjoyed working with Ms. Evans. She has a very interesting background and experiences from which many could learn.*

2. **ACHIEVEMENT OF PERFORMANCE OBJECTIVES** (How well did the employee accomplish the objectives established at the beginning of the period? What does s/he feel were contributing factors or hindrances? How were they dealt with?)

   *N/A*

3. **ADDITIONAL SIGNIFICANT ACHIEVEMENTS** (Beyond accomplishment of stated objectives, what has s/he achieved during the review period? Be specific, citing examples of personal initiative displayed, challenges accepted and met, and other factors to be considered).

   *N/A*

4. **EMPLOYEE'S COMMENTS** (please provide feedback about your manager's review). (Use separate sheet if necessary)

## SIGNATURES

| | |
|---|---|
| EMPLOYEE | DATE |
| SUPERVISOR | DATE |
| ENDORSER | DATE |

Exhibit E7  page 2

3

**Working Relationships:** Courtesy, cooperation, sensitivity, understanding of others; ability to maintain positive external relations; ability to work with other staff and external associates, particularly within the context of a team effort.



Comments:

*Ms. Evans has developed a good effective relationship with the PAES Employment Specialists and her clients. She is a strong advocate for clients and they appreciate her. However, she has struggled with developing working relationships with one or two co-workers and had uncomfortable encounters with others. However, Ms. Evans tries very hard to resolve these issues and has worked past some of these situations.*

**Flexibility:** Ability and openness to adapt to changing conditions and meet new challenges; ability to work effectively under stress; ability to integrate feedback into approach. | 1 |

Comments:

*Based upon her 11 years experience Ms. Evans possesses strong and set opinions. During her interviewing process, Ms. Evans was advised repeatedly that PCS was a different type of treatment program from other substance abuse treatment programs. She would have to be able to adapt to a work culture that she may or may not be familiar. Knowing this, Ms. Evans accepted the position. Over the past three months, it has been a challenge for Rocio to adapt. Although processes have been explained to her in her training and supported by both her clinical supervisor and program manager, Ms. Evans still questions and holds firm to what she has been doing in her past work. AARS Director of Clinical Services was asked by the Program Manager to meet with Ms. Evans to go over process.*

**Initiative and Creativity:** Willingness to offer information and/or ideas that improve operations, motivation to learn new skills. | 4 |

Comments:

*Rocio does not require constant supervision. She takes initiative to volunteer to assist with program responsibilities e.g. Art Therapy, CJP and Concillation. Ms. Evans possesses several skills and experience that she is has offered to provide training to staff e.g. Sand Play. Ms. Evans is always willing to share her knowledge and training.*

**Attendance:** Punctuality, adherence to agency policies and procedures related to attendance and leave; observances of work schedule. | 3 |

Comments:

*Rocio is often arrives early (8:00 a.m.) on the days that she has been present. She does adhere to program policies and procedures relating to notification of absence. However, she has to remember that before she request time off she has to have coverage planned before and not after the request for leave has been approved.*

**Quality of Work:** Maintain proper performance standards. | 4 |

Comments:

*Ms. Evans produces fine work. She displays very good assessment and diagnostic skills as well as comprehensive, meticulous documentation.*

**Dependability:** Timeliness and regularity in meeting obligations; follow-up on work assignments; adherence to program personnel policies. | 3 |

Comments:

*Once the PCS clinical procedures expectations were addressed, Rocio has been able to meet her obligations in a timely manner.*

**Organization of Time and Work:** Time management; consistency; ability to perform multiple tasks. | 3 |

Comments:



Exhibit 7, Page 3

2



**Job Title:** Family Therapist
**Organization:** Asian American Recovery Services, Inc. (AARS, Inc.)
**Program/Dept:** San Mateo Youth
**Location:** South San Francisco
**Reports to:** Youth Services Manager
**Classification:** Regular, Full-Time, 32-40 hours per week
**Salary Range:** $42,000 - $45,000 p.a. (License eligible intern) Non-Exempt
$48,000 - $52,000 p.a. (License with over 2 years experience) Exempt

**Description**: AARS, Inc. is an innovative co-occurring disorders prevention, intervention, treatment and research agency serving the greater San Francisco Bay Area. The Family Therapist works directly with program participants and their families and is responsible for developing, arranging and coordinating substance abuse and mental health treatment services.

### Responsibilities: (Other duties may be assigned)
- Conduct comprehensive assessments on clients for mental health and/or substance abuse treatment and referral;
- Provide family therapy, individual and group counseling for clients and their families with mental health and/or substance abuse issues;
- Participate in follow-up on treatment status of clients, including some case management and advocacy duties;
- Prepare and maintain required charting and documentation in a timely and thorough manner at the necessary standards;
- Ensure confidentiality of client records;
- Participate in professional development and training throughout the year;
- Actively participate in inter-agency and intra-agency staff and team meetings;
- Carry out administrative duties to fulfill contract requirements.

### Qualifications:
- Master's degree in mental health or related field;
- License eligible for a MFT/LCSW or Licensed MFT/LCSW; Intern must obtain licensure within 3 years after employment.
- Experience in the position of behavioral health care programs and clinical services, and knowledge of the development of current service delivery options;
- Experienced as a family therapist or counselor;
- Knowledge of mental health disorders as well as substance abuse and addiction problems;
- Demonstrated knowledge and sensitivity to the cultures of the Asian and Pacific Islander communities;
- Ability to adhere to all client confidentiality requirements and standards and handle information with tact and diplomacy;

Exhibit 8
Page 1
12.21.06

- Demonstrated excellent communication and writing skills;
- Capacity to ensure culturally-appropriate treatment;
- Bilingual language skills, (Tagalog, Samoan, Tongan, Mandarin, Cantonese, and/or Vietnamese).
- Ability to work collaboratively and as part of a team;
- Ability to work flexible hours.

**Desired Qualification:**
- Demonstrated community experience in the San Francisco Bay Area Asian and Pacific Islander communities and networks.

Application Deadline: Position will remain open until filled.

Send resume and letter of interest to:

Attn: Sunjung Cho, Youth Services Manager
AARS, Inc.
1115 Mission Road
South San Francisco, CA 94080
Fax (650) 243-4851

Due to large volume of resumes received, we are unable to acknowledge receipt of all applications. Candidates who meet specific qualifications will be contacted during the course of this search.

AARS, Inc. is an equal opportunity employer. We encourage applicants from diverse backgrounds, including women, those from different racial and religious backgrounds and diverse sexual orientations. Reasonable accommodation will be made for persons with disabilities.

Exhibit 8
Page 2
12.21.06



**ASIAN AMERICAN**
**RECOVERY SERVICES, INC.**

## JOB DESCRIPTION

Job Title:  Senior Counselor I
Organization:  Asian American Recovery Services, Inc. (AARS, Inc.)
Program:  Personal Assisted Employment Services (PAES)
Location:  San Francisco
Reports to:  Licensed Clinician and/or designate
Classification: Regular, Full-Time, Non-Exempt
Salary:  $38,000 - $42,800 p.a.

Description:  The PAES Counseling Service (PCS) is a behavioral health program serving clients in the PAES welfare-to-work program for adults with no dependents. PCS is a collaborative effort with Asian American Recovery Services, Inc. (AARS), the Department of Human Services, and Community Behavioral Health Services (DPH).

The Senior Counselor I is an entry level position, providing individual and group counseling. The person will need on-the-job-training and is expected to learn how to conduct substance abuse and mental health screenings, comprehensive assessments, and facilitate linkages to treatment and other related services. This individual must have a master's degree in a behavioral health discipline and will be closely supervised by a clinical supervisor.

Responsibilities (other duties may be assigned):

- Conduct assessments on clients for substance abuse and/or mental health treatment referrals.
- Provide individual and group counseling for clients with substance abuse and/or mental health issues.
- Participate in the follow-up on treatment and vocational placement status of clients, including some case management and advocacy duties.
- Follow up with clients in order to keep them engaged in substance abuse and/or mental health treatment services.
- Attend meetings, training, and conferences as required or recommended.
- Prepare and maintain required charting and documentation in a timely and thorough manner according to established HIPPA and AARS QA standards.
- Perform administrative duties including, but not limited to, data entry of client information.
- Adhere to all client confidentiality and Quality Assurance standards.
- Documentation of client services for purposes of billing and data entry.
- Position requires collaboration with County and community agencies that work with the same population(s).
- The Senior Counselor I is expected to be able to work in a variety of settings including, but not limited to, County Adult Assistance Program Centers.

Exhibit 9
Page 1
3/29/06

Desired Qualifications:

- Master's Degree in mental health or related field.
- Licensed or license eligible.
- Knowledgeable of mental health and substance abuse/addiction disorders,
- Experience in the delivery of mental health and substance abuse treatment services.
- Ability to work with clients of complex needs and from diverse populations.
- Good organizational skills.
- Knowledge of both the mental health and substance abuse treatment continuums.
- Knowledge of primary health care delivery in San Francisco including, but not limited to, HIV and shelter/housing resources.
- An ability to work collaboratively in a team environment.
- Bilingual Skills a plus (Spanish).

Application Deadline: Position will remain open until filled.

Send resume and letter of interest to:

AARS, Inc.
Attn: DeLynda DeLeon
1235 Mission Street, Ste. 200
San Francisco, CA 94103

FAX (415) 558-4705

jobapps@aars-inc.org

Due to large volume of resumes received, we are unable to acknowledge receipt of all applications. Candidates who meet specific qualifications will be contacted during the course of this search.

AARS, Inc. is an equal opportunity employer. We encourage applicants from diverse backgrounds, including women, those from different racial and religious backgrounds and diverse sexual orientations. Reasonable accommodations will be made for persons with disabilities.

Exhibit 9
page 2
3/29/06

CO. FILE DEPT. CLOCK VCHR.NO. 062
R6M 000544 121600 0000180033 2

ASIAN AMERICAN RECOVERY SERVICES, INC.
965 MISSION ST., STE. 325
SAN FRANCISCO, CA 94103

# Earnings Statement

Period Beginning: 04/16/2007
Period Ending: 04/30/2007
Pay Date: 05/07/2007

Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 2
CA 2

0000000033
JANE ROCIO EVANS
449 OFARREL ST. APT# 304
SAN FRANCISCO CA 94109

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 20.4981 | 88.00 | 1,803.83 | |
| Holiday | | | | 163.98 |
| Sick | | | | 163.98 |
| Vacation | | | | 163.98 |
| **Gross Pay** | | | **$1,803.83** | 8,445.19 |

| Other Benefits and Information | this period | total to date |
|--------------------------------|-------------|---------------|
| Sick Balance | | 10.88 |
| Vac Balance | | 10.95 |

| Deductions | Statutory | this period |
|------------|-----------|-------------|
| | Federal Income Tax | -202.73 |
| | Social Security Tax | -110.45 |
| | Medicare Tax | -25.83 |
| | CA State Income Tax | -58.42 |
| | CA SUI/SDI Tax | -10.69 |

year to date:
Federal Income Tax 814.32
Social Security Tax 516.63
Medicare Tax 120.82
CA State Income Tax 199.93
CA SUI/SDI Tax 50.00

**Other**
Checking 1 Dd -1,373.21
Commuter Check -22.50*  112.50

**Net Pay** $0.00

* Excluded from federal taxable wages

Your federal taxable wages this period are
$1,781.33




©2001 Automatic Data Processing, Inc.

► TEAR HERE

6 XXXX-ACP inc

Exhibit /0



Yahoo!  My Yahoo!  Mail

 **MAIL**   Welcome, **rocioevans**
[Sign Out, My Account]

Search
the Web

Mail Home - Help

| Mail | Addresses ▼ | Calendar ▼ | Notepad ▼ | | Mail Upgrades - Options |

| Check Mail | Compose | | Search Mail | Search the Web |

**Folders**   [Add - Edit]

**Inbox (596)**

Draft

Sent

**Bulk (27)**   [Empty]

Trash   [Empty]

**My Folders**   [Hide]

resume

**Search Shortcuts**

My Photos

My Attachments

Previous | Next | Back to Messages

| Delete | Reply ▼ | Forward ▼ | Move... ▼ |

This message is not flagged. [ Flag Message - Mark as Unread ]   Printable View

**Date:**   Mon, 26 Feb 2007 15:28:49 -0800 (PST)

**From:**   "rocio evans" <rocioevans@yahoo.com>  📧 Add to Address Book  ⬛ Add Mobile Alert

**Subject:**   Re: resume

**To:**   "Doris Lan" <dlan@aars-inc.org>

To Doris, I'd be happy to interoffice mail my resume as it is in hard copy, as soon as I am able. I am visiting with my brother Herbie who is from Riverside but will get that to you as soon as I can. Thank you, Jane Rocio Evans I have my office e-mail set up now, it is rocio evans, lower case. Thanks, Rocio

*Doris Lan <dlan@aars-inc.org>* wrote:



Hi Rocio,

How are you doing? Is your PAES email set up yet? I was reviewing your file and noticed we are missing your resume. Would you please email that to me?

Thank you,

Doris

Doris Lan
Human Resources Generalist
Asian American Recovery Services, Inc.
1115 Mission Road
So. San Francisco, CA 94080
650.243.4888 x883 telephone
650.589.4667 direct fax

It's here! Your new message!
Get new email alerts with the free Yahoo! Toolbar.

| Delete | Reply ▼ | Forward ▼ | Move... ▼ |

Previous | Next | Back to Messages

Save Message Text | Full Headers

Exhibit 11

06/11/2007  15:40    415-321-1471    AARS HR CENTRAL    PAGE  01

*To. Rocio Evans*

## Interviewed Rocio (Jane) Evans, Senior Counselor of PAES on June 6, 2007 by Mary Cheung, Human Resources Director

On June 4, 2007 Rocio sent emails to Mary stating that she has ~~~~~~~~~~~~~~~~~~~~~~~~~~~~ and scapegoated heavily in the workplace by her co-workers.  Rocio was interviewed to provide information regarding this allegation.

| Question | Interviewers/ Interviewee | Question/Answer |
|---|---|---|
| Q. 1. | Mary | What are your concerns? |
|  | Rocio | I want to clear up my professional reputation with the Agency because several co-workers had slandered me.  I am concerned how far it went, I felt that it is endangering my employment termination with AARS, affecting the fairness of my performance evaluation and the quality of professional reference from my supervisor, and this is the primary reason why RAMS is not hiring me. |
|  | Mary | Who are the co-workers you think are slandering your reputation? |
|  | Rocio | Definitely Carrie Langenbach and Jessica Katzman.  And I have reasonable suspicion that John Andonakakis also slanders my reputation. |
| Q. 2 | Mary | You said Carrie Langenbach slandered your reputation, when did this happen and did you hear that yourself? |
|  | Rocio | After a group meeting with the clients on ????, Carrie said to me, "You're not a good team player."  I believe she said that because she thought I went against the harm reduction model.  And I ~~know~~ *believe* she told Jessica about that. |
|  | Mary | How do you know she told Jessica about that? |
|  | Rocio | Jessica also said I am not a good team player. They are friends. They ~~always~~ go out to lunch together.  I wonder how Jessica knows whether I am a good team player or not since she never directly ~~~~~~~~~ group with me.  I assume Carrie told her. ~~observed this~~ |
|  | Mary | Did you respond to Carrie's comment?  *have reasonable suspicion To believe* |
|  | Rocio | I told Carrie that this is something that we should take it to the supervisor to resolve. |

*Exhibit IIa*

| Q. 3 | Mary | You said Jessica Katzman slandered your reputation, when did this happen and did you hear that yourself? |
|------|------|--------------------------------------------------------------------------------|
| | Rocio | around February<br>In a clinical team meeting and not. Jessica said to me in front of the group, "You're not a good team player." Her tone of voice was accusatory, loud and controlling. |
| | Mary | What was your reply to her statement? |
| | Rocio | I just said, "I know I'm a good team player." |
| | Mary | Did you ask Jessica why she said that to you? |
| | Rocio | Yes, she said it was because I went against the harm reduction model. |
| | Mary | Who was in the meeting? |
| | Rocio | Jessica Katzman, Carrie Langenbach, Susan Chon, John Andonakakis, Kyoko Moriguchi, Patricia Ramos, Tila Leibowitz, Helen Martin, Bob Liss, and myself were at the meeting. |
| | Mary | Did anyone else in the group say anything after Jessica made the comment to you? |
| | Rocio | No, everybody was quiet. But after the meeting Susan Chon said to me that she admired the way I handled myself at the meeting and that I have ~~stress~~ courage. |
| | Mary | Did you tell Jessica that you are concerned that she slandered you? |
| | Rocio | No. Because I didn't know until I talked to my attorney that it was a slander. |
| Q. 4 | Mary | What happened then? |
| | Rocio | I asked my Clinical Supervisor, Trevor Graham, if I can have a meeting with him, ~~Frelynda Derbeum~~ Bob Liss, Jessica Katzman and Carrie Langenbach to address the issue. Trevor arranged the meeting about two weeks later. |
| | Mary | What is the objective of you asking for the meeting? |
| | Rocio | My objective is to get conflict resolution so that I can have better |

Exhibit 11a

|  |  |  | working relationship with the other colleagues. |
|---|---|---|---|
|  |  | Mary | Was the objective achieved? |
|  |  | Rocio | I would say no.   At the meeting, I told Trevor that Jessica ~~was~~ had ~~yelling at me~~ saying that I was not a good team player.  But Bob denied that Jessica had yelled at me but he did not deny that Jessica said I was not a good team player.  Bob said, "Things like that do not happen in my group meeting."   I am upset that Bob denied that Jessica had yelled at me. |
|  |  |  | And I don't felt I got ~~the~~ support from Trevor.  He did not say anything, but looked confused.  To be fair, he didn't know how to handle it |
|  |  |  | DeLynda was not there.  It was important that she be there because she is the Program Manager |
|  |  | Mary | Did you ask DeLynda to attend the meeting? |
|  |  | Rocio | No.  ~~I left it to the clinical supervisors, Bob and Trevor to decide on who should attend the meeting.~~ |
|  |  | Mary | Did Jessica and Carrie say anything during the meeting? |
|  |  | Rocio | Jessica said more negative things about me along the line that I was not collaborating with the other people.  My experience with her ~~was~~ that ~~and~~ undermining and sabotaging.  Carrie did not say very much at all.  me. |
|  |  | Mary | Anything else happened in the meeting that you want to report? |
|  |  | Rocio | I told the group that I wanted more kindness.  Jessica said it was unreasonable to ask for more kindness.  However, Bob said it is a reasonable request and they should try to make an effort to give it to me. |
|  | Q 5 | Mary | You said John Andonakakis slandered your reputation. when did this happen and did you hear that yourself? |
|  |  | Rocio | John told me that I broke confidentiality.   This is a harsh statement. |
|  |  | Mary | Do you know why John said that? |

MY experience
with WER is
that she is
undermining
and
Sabotaging
me as
a
Co-worker.

Exhibit 11a

| | | | |
|---|---|---|---|
| | Rocio | He said I broke the confidentiality when I showed him an email sent from Trevor. The email was regarding the things being discussed during the clinical meeting. Trevor wrote, "We all agreed that the training is not adequate." I showed the email to John because I want to tell him that I don't agree with what Trevor wrote. In the meeting, I did not agree that the training is not adequate because I don't think it is fair to Kamilla Keat, who is in *dous* Much charge of the training. I don't want to be a part of that statement | |

Also, there is something else that I am concern with what John said to me when I first started working at PAES. I told him that I am a licensed Therapist. He replied, "Just because you're licensed, it does not mean you're good at your job clinically."

He once introduced me to a client saying, "This is our brand new counselor." I then said to the client, "I am also a licensed Marriage and Family therapist. This is my hypothesis that John slandered me because I bring up my title. I don't have proof or witness. J P E

| | | | |
|---|---|---|---|
| Q. 6 | Mary | Anything else? Shortly after | |
| | Rocio | In February when I first got here, DeLynda came to my desk and told me that my Clinical Supervisor Bob had told her that I am *an in* your face type of person. DeLynda also told me that Robert said to her that I refused to do the quality review. I think Bob misunderstands me because he was brainwashed and influenced by Jessica. I am upset with this disrespectful comment about me. | |
| | Mary | Why do you say Bob was brainwashed and influenced by Jessica? | |
| | Rocio | I heard Jessica said that "in your face type" expression before about someone else, thus I suspect this came from her and Bob is being influenced. DeLynda told me that Robert didn't want to have me in his team and thus I was transferred to Trevor's team. I suspect something had been said affecting my professional reputation. | |
| Q. 7 | Mary | Why did you say that the alleged slander is endangering your employment with AAKS. | |
| | Rocio | During the meeting with DeLynda, Trevor, and Daniel Toleran, Director of Clinical Services, Daniel said to me, "If you don't allow Trevor to fill out the diagnosis for you, you will be terminated. Why did he have to bring up the word "termination"? J P E | |

4.7

Exhibit 11a

| | | My hypothesis is that he had heard had thing about me not being a good team player, and therefore made such a comment. |
| Q. 8 | Mary | Why did you say that the alleged slander is affecting the fairness of your performance evaluation? |
| | Rocio | I have asked DeLynda for a performance evaluation and I am concerned that the slander is going to affect my performance evaluation. |
| | Mary | Has DeLynda given you the performance evaluation yet? |
| | Rocio | No, but it will be done as soon as possible. |
| | Mary | Since DeLynda has not yet given you any performance evaluation, is it your assumption that the performance evaluation will be unfair? |
| | Rocio | Yes, you're right. I guess I need to see the performance evaluation first. |
| | Mary | I received a copy of the performance evaluation written by you; did you send that to me? |
| | Rocio | Yes I sent that to you. DeLynda has asked me to provide a self-evaluation on my own performance. I also gave De Lynda a copy. |
| Q. 9 | Mary | Why did you say that the alleged slander is affecting the quality of professional reference from your supervisor? |
| | Rocio | When I asked DeLynda to give reference on me, she said, "Yes, I can get you the reference. But what if you get fired at your next job, then my professional reputation will be on the line." I don't understand why she said that to me. I am concerned that I'm getting fired J R.E. I am afraid that I'm getting fired |
| | | I appreciate DeLynda gave the reference on me. When I asked DeLynda to give the reference to the CEO of RAMS, she said even if I were hired, I could not work with Jessica and Carrie, how could she give a reference to RAMS about me. I felt that DeLynda was being brainwashed and influenced. |
| | | DeLynda also told me that some co-workers had been complaining about me. I like to know what they said about me. My attorney said that I have the right to know about the complaints so that I |

|  |  | will be able to give my side of the story. |
|---|---|---|
| Q. 10 | Mary | Why did you say that the alleged slander is the primary reason why RAMS did not hire you? |
|  | Rocio | The CEO of RAMS said to me "Your references are excellent but I'm still not going to hire you. I need to know more of what your work is like after your license." I told him that DeLynda is willing to give reference for me. I also asked him, "If I give you more references, would you delay your decision?" His reply was he had already made his decision of not hiring me, it was not because of my qualification, ~~but it was my personality.~~ it was because of MY personality. |
|  | Mary | Do you know what he meant by that? |
|  | Rocio | I asked him what that meant. His response was, "You're not assertive and dynamic in groups." |
|  |  | *have run* |
|  |  | I am curious what made him said that. I ~~run~~ 15 groups and I love running groups. I am not naive so I asked him if he had heard anything from PAES about me. He replied, "Yes, but not coming from Trevor or Bob." |
|  |  | I suspect the CEO of RAMS might have heard ~~about the slander~~ from ~~probably Jessica, Carrie & John~~ that's why he thinks I ~~don't have assertive personality in groups.~~ |
|  | Mary | Have you ever heard Jessica, Carrie, and/or John said that you don't have assertive personality in groups? |
|  | Rocio | No I did not hear them say anything about that myself. |
| Q. 11 | Mary | Is there anything else that you want to report? |
|  | Rocio | I have told Trevor that I did not want to participate in the SURI substance recovery group because I felt unsafe. |
|  | Mary | Why do you feel unsafe in participating in the SURI group? |
|  | Rocio | There was one time during the SURI substance recovery group meeting when the clients were not there. Jessica said they are not going to make out the schedule. She then asked Kamitha to make out the schedule for me. I felt uncomfortable because Kamitha does not have the authority to do the schedule for me and Jessica does not have the authority to ~~ask~~ tell Kamtha what to do ~~neither~~ either. She |

*She said, "Karitha, as her Trainer, you Make out the Schedule for Rocio." — Her Exhibit 11a.*

*Kalzmon 7*

*Counter-offer, —*

| | | |
|---|---|---|
| | | made me feel unsafe because she is ordering, controlling, and violating the group process. They took over the supervisor's decision by telling me to ~~be the facilitator~~ without informing the supervisor. I don't want to participate in that group not because I am not a good team player, but I ~~was~~ feel unsafe. but because I feel unsafe. |
| Q. 12 | Rocio | Can I get 3-4 months Unemployment pay? |
| | Mary | No. AARS do not pay unemployment. Payment of unemployment benefit is determined by the EDD. You should file your unemployment benefit claim with the EDD. |
| | Rocio | But I am not qualified for the unemployment benefit. |
| | Mary | I understand that the layoff of the PAES staff could cause financial hardship to some employees, but unfortunately we cannot approve the unemployment benefit. |

*(handwritten in right margin)* — be in SORT

---

Signature of Rocio (Jane) Evans agreeing to the above content                Date

*(handwritten)*

P.S. I will sign
When it is corrected.
I am more than willing
To cooperate with
signing it as soon
as possible once
it is corrected —
Thank you, Rocio.

7/7

Exhibit 11a

Ist Interview: Page 1, Question 2: around February 2007. Page 2: Question 3: around February 2007.

Page 3, Question 4: Leave in;" I left it to the clinical Supervisors, Bob and Trevor to decide on who should attend the meeting."

Question 4: 'Jessica said more negative things about me along the line that I was not collaborating with other people. My experience with her is that she is undermining and sabotaging me as a co-worker.

Page 4, Question 5: It is my hypothesis that John or another co-worker slandered me because I bring up my Title. My sense is that the comments concerning my having an 'in your face personality,' have much to do with my bringing up my MFT Title, which I am legally within bounds, according to the Board of Behavioral Sciences, to do so. This refers to the BBS regulation of accurate representation of Title.

Page 5, Question 9: I am afraid that I am getting fired here at PAES.

Page 6, Question 10,

I suspect the CEO of RAMS might have heard about the slander, which probably originally came from Jessica, Carrie, and John. That is probably why he assumes I don't have an assertive personality in groups.

Page 6, Question 11,

I felt uncomfortable because Kamtha does not have the authority to do the schedule for me and Jessica does not have the authority to tell Kamtha what to do either. Jessica said:"Kamtha, as her trainer, you make out the schedule for Rocio."

Page 7, Question 11,

I don't want to participate in that group not because I am not a good team player, but because I feel emotionally unsafe.

Jane Rocio Evans, MFT, PAES Senior Counselor

**Trevor Graham/DHS/CCSF**
04/13/2007 02:42 PM

To   Rocio Evans/DHS/CCSF@CCSF

cc   De Lynda De Leon/DHS/CCSF@CCSF

bcc

Subject   Re: meeting 📄

Ok, let's all schedule the meeting for 1PM on Monday.

Trevor Graham, Psy.D.
Clinical Supervisor
PAES Counseling Services
phone: (415) 558-1327
fax: (415) 558-4705

This message and any attachments are solely for the intended recipient and may contain confidential or privileged information. If you are not the intended recipient, any disclosure, copying, use, or distribution of the information included in this message and any attachments is prohibited. If you have received this communication in error, please notify me by reply e-mail and immediately and permanently delete this message and any attachments.  Thank you.
Rocio Evans/DHS/CCSF

**Rocio Evans/DHS/CCSF**
04/13/2007 02:40 PM

To   Trevor Graham/DHS/CCSF@CCSF

cc

Subject   Re: meeting 📄

Trevor, 1 p.m. would work for me as I have an assessment scheluded for that morning at 10 a.m. Thank you for your time with this. Rocio

Exhibit 12

**Rocio Evans/DHS/CCSF**

06/22/2007 04:54 PM

To  Carrie Langenbach/DHS/CCSF@CCSF

cc

bcc

Subject  client at CJP

Hello, Ty from CJP wanted me to communicate with you regarding client Robert G██████, who has told me you are his Counselor at PAES. During my last one to one with this client at CJP, he told me that he has been having insomnia . He has missed work due to this insomnia. His performance evaluation at work says that he has been having some frustration when learning new job functions. My recommendations are to assess for depression and to monitor his level of depression. He does not report any suicide ideation/thoughts of dying at this time. I am also recommending a referral for this client for a psychiatric evaluation, in order to have a second opinion as regards to wether any tangential thinking, delusions, are affecting this client. I am also recommending that this client continue in individual Counseling in PAES on a weekly basis at this time. I will also continue to have a one to one with him next week at CJP. Please e-mail me or stop by my desk if you have any questions. Thank you, Rocio

Exhibit 13



**"Mary Cheung"**
**<mcheung@aars-inc.org>**

04/20/2007 04:09 PM

To  "Akiko Allen" <aallen@aars-inc.org>, "Anthony Chea-Chen"
     <achea-chen@aars-inc.org>, "Alexis David"
     <adavid@aars-inc.org>, "Anastacio Flores"
cc  "Jeff Mori" <jmori@aars-inc.org>

bcc

Subject  AARS Employee Retreat (5/7/2007) - Monday


To all AARS Employees:

Please reserve May 7, 2007 (Monday) to attend our Agency Employee
Retreat. Please note that your attendance is MANDATORY.  All absences
must be pre-approved by management.

The Employee Retreat will start at 8:30 AM and is expected to be a full
day event.  Agenda will be released once it is finalized.  The following
will be covered during the retreat:

- New benefit plan & open enrollment announcement
- Pension plan (fund investment)
- Sexual Harassment and American with Disabilities Act - Disability
sensitivity training
- Healthy life style

Breakfast and lunch will be provided.  It will be held at the
Conference Center at St. Mary's Cathedral in San Francisco.  We'll
announce the address and direction to the conference center in due
course.

Please contact HR if you have any questions regarding this retreat.

Mary



Mary Cheung
Human Resources Director
1115 Mission Road
South San Francisco CA 94080
Tel. 650-243-4888 x 882
Fax. 650-589-4667

Mary Cheung
Human Resources Director
1115 Mission Road
South San Francisco CA 94080
Tel. 650-243-4888 x 882
Fax. 650-589-4667

Exhibit 14



**ASIAN AMERICAN**
**RECOVERY SERVICES, INC.**

August 9, 2007

Ms. Jane Rocio Evans
P. O. Box 424886
San Francisco CA 94142

Dear Ms. Evans,

### Re:  COMPLAINTS

This is in response to your complaints concerning your co-workers and supervisors at Asian American Recovery Services, Inc. (AARS).

As a result of your complaints, we conducted a thorough investigation at Personal Assisted Employment Services (PAES) Counseling Services Program.   We interviewed the Program Manager, two clinical supervisors, six of your PAES co-workers, Associate Director of Clinical Services, and a PAES employee from the San Francisco Department of Public Health.

### A.  Your Complaints Against your Co-worker Carrie Langenbach

You claimed that:
(a) Carrie said to you that you were not a good team player and you believed that Carrie told Jessica about that.
(b) Carrie slandered about you not being assertive and dynamic in groups.  You suspected the CEO of RAMS might have heard about the slander and that was the reason why RAMS did not hire you.

Based on our investigation findings, we concluded that there is insufficient evidence to support your allegations that Carrie slandered you.

### B.  Your Complaints Against Your Co-worker Jessica Katzman

You claimed that:
(a) Jessica slandered you by saying that you were not a good team player and her tone of voice was accusatory, loud, and controlling. You named Jessica's action and word as racial harassment and racial discrimination.
(b) Jessica said it was unreasonable to ask for more kindness when you requested for more kindness.
(c) Jessica slandered you by saying you are "an in your face" type of person and Clinical Supervisor, Robert (Bob) Liss was influenced by her.

1/5

Exhibit
15

(d) Jessica slandered about you not being assertive and dynamic in groups. You suspected the CEO of RAMS might have heard about the slander and that was the reason why RAMS did not hire you.

(e) Jessica ordered Kamtha Keow to make out a schedule for you but she was not Kamtha's supervisor or your supervisor.

(f) Jessica reported to the Program Manager, DeLynda DeLeon that you contradicted Ryoko Moriguchi in group. This undermined your professional reputation and Jessica intentionally did it to get you in trouble.

Based on our investigation findings, we concluded that there is insufficient evidence to support your allegations against Jessica.

## C. **Your Complaints Against Your Co-worker John Andonakakis**

You claimed that:

(a) John said to you that you broke confidentiality. You felt that this was a harsh statement.

Based on our investigation finding, John said that to you because you were trying to tell him something related to another co-worker, which was being discussed in a meeting. John felt that this matter was confidential and he did not feel comfortable talking about that. There is insufficient evidence to support that John was harsh to you.

(b) When you told John that you are a licensed Therapist, he responded saying that just because you're licensed, it does not mean you're good at your job clinically.

(c) John slandered you because you brought up your Marriage & Family Therapist (MFT) title.

(d) John slandered about you not being assertive and dynamic in groups. You suspected the CEO of RAMS might have heard about the slander and that was the reason why RAMS did not hire you.

Based on our investigation findings, we concluded that there is insufficient evidence to support your allegations that John slandered you.

## D. **Your Other Complaints Against Your Co-workers (names unidentified)**

You claimed that:

(a) Your PAES co-workers from AARS were spreading rumors that you were seen talking to yourself in the streets of San Francisco and a PAES Counselor said that you have mental problems and you are a crazy person.

(b) Other staff was asking DeLynda why you were hired.

Based on our investigation findings, we concluded that there is insufficient evidence to support your allegations.

(c) Your Program Manager, DeLynda DeLeon told you that some colleagues had been complaining about you.

There were situations that some of your co-workers had raised concerns about their working relationship with you. Your Program Manager discussed the issues with you attempting to resolve the situations. You had also complained to the Program Manager about those issues.

### E. **Your Complaint Against Associate Director of Clinical Services, Daniel Toleran**

You claimed that Daniel said to you that if you didn't allow your Clinical Supervisor, Trevor Graham to fill out the diagnosis for you, you would be terminated. Your hypothesis was that he had heard bad things about you not being a good team player, and therefore made such a comment and you felt that your employment was on the line.

Based on our investigation finding, we concluded that there is insufficient evidence to support your allegation that Daniel heard bad things about you and threatened to terminate your employment.

### F. **Your Other Concerns Related to the Alleged Slander/Rumor**

You claimed that the alleged slanders and rumor:
(a) Had endangered your employment with AARS.
(b) Had affected the fairness of your performance evaluation.
(c) Had affected the quality of professional reference from your supervisor.
(d) Was the primary reason why RAMS did not hire you.

Based on our investigation findings, there is insufficient evidence to support your above allegations because:
(a) AARS had never considered terminating your employment due to the alleged slander/rumor other than layoff when the PAES program ended.
(b) Your Program Manager prepared your performance evaluation in a fair manner. You were offered the opportunity to go over the performance evaluation with your Program Manager, but you declined to have such a discussion with her.
(c) RAMS did not contact your Program Manager for reference check although you had given your Program Manager the authorization to provide your employment reference to your potential employer.
(d) Since there was no proof that your co-workers had slandered you and spread the rumor about you and we do not know RAMS' reason of not hiring you, we are unable to determine whether or not any wrongdoing has occurred.

## G. Your Complaints Against Clinical Supervisor, Robert (Bob) Liss

You claimed that:
(a) Bob denied that Jessica had yelled at you by saying things like that do not happen in his group meeting.
(b) Bob told DeLynda that you were "an in your face" type of person.

Based on our investigation, we concluded that there is insufficient evidence to support your allegations.

(c) You also complained that Bob recommended to DeLynda to terminate you.

Based on our investigation finding, you demonstrated you had great difficulties in accepting the clinical supervision requirement of the job during your 90-day introductory period. You felt that clinical supervision is not needed since you have a MFT license. The PAES management team members including Bob, had discussions on whether you would work out at PAES because you constantly challenged the requirement of clinical supervision of your job and you had difficulties in working with your co-workers. Nevertheless, no decision was ever made to terminate your employment prior to the end of the PAES program.

## H. Your Complaints Against Clinical Supervisor, Trevor Graham

You claimed that:
(a)  Trevor said you had a significantly smaller caseload than the other counselors as a criticism.
(b)  Trevor disagreed with you on a client's diagnosis and you considered that as gender harassment because Trevor respected Bob's judgment but not yours although you are the same level.
(c)  It is unlawful for Trevor Graham to sign on the charts of your clients.

Both Trevor and Bob are clinical supervisors and your position as Senior Counselor I is to be closely supervised by a clinical supervisor. As your Clinical Supervisor, Trevor had the responsibilities to evaluate and supervise your work related matters. Based on our investigation findings, we concluded that Trevor's comments/feedbacks to you were not critical or disrespectful. Trevor signed on your clients' charts in accordance with AARS clinical service policies.

(d)  Trevor authorized Kamtha to regularly check on you whether you sat in the intake session. You named this action as gender harassment.
(e)  DeLynda asked you why you didn't transfer your clients. You thus felt that Trevor was not communicating to DeLynda that you were doing your job duties. You considered that as hostile.

Our investigation findings indicated that there is no evidence to support these allegations.

4/5

Exhibit 15

p. 4

## I.  Your Complaints Against Program Manager, DeLynda DeLeon

You claimed that:
(a) DeLynda said to you that she could get you the reference, but if you get fired at your next job, her professional reputation will be on the line.

Based on the investigation finding, DeLynda talked to you about her experience in giving out reference in her previous employment, but this was not said in relation to providing reference on you.

(b) When you asked DeLynda to give reference to the CEO of RAMS, she said even if you were hired, you could not work with Jessica and Carrie and how could she give a reference to RAMS about you.  You felt that DeLynda was being brainwashed and influenced.

Based on our investigation finding, DeLynda was trying to help you to think through whether or not working at RAMS was really what you wanted and in your best interest because you had been complaining that you could not work with Jessica and Carrie.  DeLynda wanted to alert you that if RAMS hired you, you still needed to think about how to handle the working relationship with them since this was still unresolved.  DeLynda just tried to help you to think carefully whether you really wanted to do that.

To conclude, our investigation findings indicated that there is insufficient evidence to support whether or not any wrongdoing had occurred in the parts of your co-workers, clinical supervisors, Program Manager, and Associate Director of Clinical Services.  However, while we remain open to receiving any evidence, which might corroborate your claims, there is nothing further that we can do at this time.

You may review AARS' Personnel Policies and Procedures Manual 34.00 for your grievance/appeal rights.

Please contact me should you have any questions.

Yours truly,

Mary Cheung

Mary Cheung
Director of Human Resources

cc. David Yonemoto, Associate Director of San Francisco County

5/5
Exhibit 15
p. 5



Trevor Graham
<Trevor.Graham@sfgov.org
>

06/20/2007 09:54 AM

To  De Lynda De Leon <DeLynda.DeLeon@sfgov.org>,
    robert.liss@sfgov.org, John Andonakakis
    <John.Andonakakis@sfgov.org>, Susan Chon
cc
bcc

Subject  Final Client transfers, effective July 2

The final batch of clients from Rocio's caseload need to be transferred. I know all of you are really full. Hopefully when the new counselors come on board, they will be able to take some of the pressure off. Please see below for the assignments:

Patricia:  Jacqueline Goethe

Kamtha: Francisco Hernandez (temporary - to be transferred to spanish speaking counselor ASAP when one is on board here)
     Frederick Smith

Queenette:  Victor Ramirez

John :  Sir Michael Maps (please strongly consider SSI for this client)

Jessica:  Alonzo Scott

could everyone make sure that they confirm this with rocio and coordinate a time in the next week (if possible) to introduce yourself to the client. Rocio will be providing you with a treatment summary as Kavoos requested.

Thank you all!

Trevor

Trevor Graham, Psy.D.
Clinical Supervisor
PAES Counseling Services
phone: (415) 558-1327
fax: (415) 558-4705

This message and any attachments are solely for the intended recipient and may contain confidential or privileged information. If you are not the intended recipient, any disclosure, copying, use, or distribution of the information included in this message and any attachments is prohibited. If you have received this communication in error, please notify me by reply e-mail and immediately and permanently delete this message and any attachments. Thank you.

Exhibit 16



**"Doris Lan"**
**<dlan@aars-inc.org>**
04/11/2007 05:37 PM

To  <Rocio.Evans@sfgov.org>

cc

bcc

Subject  Re: interest in job position


Hi Rocio,

I got your message earlier today. I will give you a call
tomorrow to make sure you are standing by the fax
machine when I fax it over.

Yes, you can go ahead and apply for the therapist
position, but let Sunjung know you are a current
AARS employee too.

Thanks,

Doris
>>> Rocio Evans <Rocio.Evans@sfgov.org> 04/11/07 03:46PM >>>

Hi Doris, I hope you are well.  I am very interested in applying for
theTherapist position in South San francisco, with San Mateo Youth.
De
Lynda has also encouraged me to apply for this position.  I have found
her
very supportive.
 Could you please fax me my resume at 415) 558-4708, here at PAES? I
would like to update it as soon as possible and fax it to Sunjung Cho.
 Is this the correct way to approach this or do you send her my resume?
Feedback would be appreciated, thank you, Jane Rocio Evans.

Exhibit 17 (cc)
page 3



| De Lynda De Leon/DHS/CCSF | To | Rocio Evans/DHS/CCSF@CCSF |
| 06/26/2007 10:21 AM | cc | |
| | bcc | |
| | Subject | Re: Change in Mary's schedule & CJP |

Mary wasn't specific.

CJP: If you need any assistance in completing the reports let me know. I showed you the templates for the various reports that are on the computer at CJP and I hope you don't have any problems understanding them since you haven't asked me any questions. Just remember to email me drafts before you submit to CJP as Arthur did.

The following are the reports that should be prepared for CJP:

(1)    Weekly Tier 1 clients' assessments for week ending 6/22 & 2/29

(2)    A monthly summary report for the month of June.


I will be in the office all day if you have any questions.


Thanks,

D


DeLynda DeLeon
Program Manager
PAES Counseling Services
1235 Mission Street, 2nd Floor
Tel: (415) 558-1363
Fax: (415) 558-4705

This message and any attachments are solely for the intended recipient and may contain confidential or privileged information. If you are not the intended recipient, any disclosure, copying, use, or distribution of the information included in this message and any attachments is prohibited. If you have received this communication in error, please notify me by reply e-mail and immediately and permanently delete this message and any attachments. Thank you.

Rocio Evans/DHS/CCSF

| Rocio Evans/DHS/CCSF | To | De Lynda De Leon/DHS/CCSF@CCSF |
| 06/26/2007 10:05 AM | cc | |
| | Subject | Re: Change in Mary's schedule |

That's fine, I can meet with her at 2:00 p.m. Could you please e-mail me what the purpose of the meeting is? Also, just wish to update you and let you know that I've submitted all of my billing sheets in to Bruce, indirect and nondirect. The CJP Monthly report will be in on time tomorrow. Also, all of the CJP

Exhibit 19

Recio

Please review the enclosed interview note.

If you want to make some changes, please mark on the sheet and fax it over to me to make the revision.  My fax # is 650-589-4667.

If everything is fine, please sign and return original copy to me.

Please let me know if you have any questions.

Thanks.

Mary

6/22/07

P.S.  You have already signed the 1st one, but I made a change on the job title to Sr. Counselr I
Pls review again.

Exhibit 20