**United States District Court**
For the Northern District of California

1
2
3
4
5              UNITED STATES DISTRICT COURT
6              NORTHERN DISTRICT OF CALIFORNIA
7
8   JANE ROCIO EVANS,                    No. C-08-0944 EMC
9              Plaintiff,
10      v.                               **ORDER DENYING PLAINTIFF'S
                                         MOTION TO SET ASIDE JUDGMENT
11  ASIAN AMERICAN RECOVERY              ON RECORD AND GRANTING
    SERVICES,                            DEFENDANT'S MOTION TO
12                                       ENFORCE SETTLEMENT AND
               Defendant.                DISMISS ACTION WITH PREJUDICE**
13  _____/
                                         **(Docket Nos. 29, 32, 33)**
14
15          Currently pending before the Court are Plaintiff Janet Rocio Evans's motion to set aside the
16  judgment in this case and Defendant Asian American Recovery Services's motion to enforce the
17  settlement and dismiss the case with prejudice.  Having considered the parties' briefs and
18  accompanying submissions, as well as the oral argument of Ms. Evans and counsel for AARS, the
19  Court hereby **DENIES** Ms. Evans's motion and **GRANTS** AARS's motion.
20                  **I.    FACTUAL & PROCEDURAL BACKGROUND**
21          Ms. Evans initiated this lawsuit in February 2008.  In her complaint, she alleged that AARS
22  had discriminated against her (largely on the basis of race although gender is also implicated) as
23  well as defamed her.  The primary relief identified by Ms. Evans in her complaint was monetary
24  damages -- *e.g.*, payment for the bilingual services she provided and payment to reflect her
25  professional marriage family therapist license.  *See* Docket No. 1 (complaint).
26          A settlement conference in the case was held on August 15, 2008, before U.S. Magistrate
27  Judge Bernard Zimmerman.  *See* Docket No. 28 (civil minute order).  After two hours of negotiation
28  supervised by Judge Zimmerman, the parties reached an agreement, and Judge Zimmerman

convened the parties in the courtroom to put the agreement on the record.  *See* Charbonneau Decl. ¶ 3.  *See* Docket No. 28 (civil minute order).

Judge Zimmerman described the settlement as follows: In exchange for payment of $4,000, Ms. Evans would "release all of her claims against [AARS]" and would "dismiss [the] lawsuit with prejudice."  Charbonneau Decl., Ex. A (Tr. at 2).  Judge Zimmerman explained to Ms. Evans that this meant she would "give up the claims that you have against [AARS].  And it's all of the claims, because you've mentioned a lot of things today that have to do with your past employment."  Charbonneau Decl., Ex. A (Tr. at 2).  Subsequently, Judge Zimmerman added another term to the settlement upon agreement by the parties -- *i.e.*, that the terms of the settlement would be confidential.  *See* Charbonneau Decl., Ex. A (Tr. at 4).  Because Ms. Evans expressly voiced concern about what AARS might say about her employment with the organization, Judge Zimmerman included as part of the confidentiality provision that, if AARS were contacted for a job reference, it would give out only basic information such at the job title and salary.  *See* Charbonneau Decl., Ex. A (Tr. at 4).

Importantly, before Judge Zimmerman concluded that an enforceable agreement had been made on the record, *see* Charbonneau Decl., Ex. A (Tr. at 3), he asked Ms. Evans: "[D] you have anything you wish to add or clarify?  Any questions you have about the settlement?"  Ms. Evans's response was "Um, no."  Charbonneau Decl., Ex. A (Tr. at 2).  Judge Zimmerman and Ms. Evans then engaged in the following exchange.

| | |
|---|---|
| J. Zimmerman: | [W]e've explained the terms of the settlement, you don't have any further questions, you understand the terms of the settlement? |
| Evans: | Yes. |
| J. Zimmerman: | And you are willing to settle on those terms? |
| Evans: | Yeah, I understand the terms of the settlement. |
| J. Zimmerman: | And they're acceptable to you? |
| Evans: | Yes, they are. |

*United States District Court*
For the Northern District of California

1  Charbonneau Decl., Ex. A (Tr. at 3).  Notably, before this final exchange, Ms. Evans stated her

2  "hope that it will become a lesson for everyone to learn about what happened here" and added that

3  now she could "definitely move on."  Charbonneau Decl., Ex. A (Tr. at 3).

4        Subsequently, and consistent with Judge Zimmerman's instructions, AARS sent to Ms.

5  Evans a written settlement agreement for her to sign.  *See* Charbonneau Decl. ¶ 5.  Ms. Evans

6  received the written agreement on August 22, 2008.  *See* Charbonneau Decl. ¶ 6.  The next day, Ms.

7  Evans sent an e-mail to counsel for AARS.  *See* Charbonneau Decl., Ex. D (e-mail).  In the e-mail,

8  Ms. Evans stated that she had spoken with counsel just three days after the settlement conference

9  and that, during that conversation, she "communicated that it is completely against my values and

10  principles to accept Judge Zimmerman's Judgment as stated at the settlement Conference, that I

11  made Charges on [AARS], 'with prejudice.'"  Charbonneau Decl., Ex. D (e-mail).  Ms. Evans went

12  on to assert that the settlement conference had violated her right to due process because "Judge

13  Zimmerman did not call a sufficient number of witnesses in order to have an adequate discovery

14  process" and she "felt pressured by Judge Zimmerman to decide in 15 minutes."  Charbonneau

15  Decl., Ex. D (e-mail).  Ms. Evans also claimed that AARS had behaved unethically because it did

16  not communicate to Judge Zimmerman "the need to respectfully follow due process and the need for

17  a more [thorough] discovery process and a calling for more witnesses."  Charbonneau Decl., Ex. D

18  (e-mail).

19        According to Ms. Evans, "[t]he big picture is that I was not paid for my being a Licensed

20  Marriage, family therapist and that AARS violated wage discrimination law.  These concerns were

21  not addressed at this settlement Conference.  Judge Zimmerman said that he had not had a chance to

22  read my Statement, thus he made this [Judgment] about my having prejudice before even reading

23  this statement."  Charbonneau Decl., Ex. D (e-mail).  She concluded by stating as follows:

24             Again, I will never be accepting such a small settlement of $4,000, on
           the grounds that I am grossly insulted by the amount and that it is

25             grossly unfair, in proportion to the harm that I have suffered.  [I] will
           be writing to you the amount that I feel the negotiations need to start

26             at, after serious attorney consultation.  I am requesting to be paid for
           my MFT license, [S]panish speaking ability, nine months of

27             [unemployment], severance pain and damages suffered.  Again, even
           if I don't get a penny for this, the [principle] of the matter is the most

28

United States District Court
For the Northern District of California

1    important, . . . as I have been losing sleep over Judge Zimmerman's
2    judgment and have been greatly alarmed by it.

3  Charbonneau Decl., Ex. D (e-mail).

4                              II.   **DISCUSSION**

5        As a preliminary matter, the Court must address whether federal or state law governs the

6  enforceability of Ms. Evans's release of claims in the settlement agreement placed on the record

7  before Judge Zimmerman.  AARS contends that federal law applies, and the Court agrees.  In this

8  case, Ms. Evans has claimed, *inter alia*, employment discrimination on the basis of race in violation

9  of Title VII, and, under Ninth Circuit case law, "[t]he validity and interpretation of a release of

10  significant federal rights is governed by federal law."  *Salmeron v. United States*, 724 F.2d 1357,

11  1361 (9th Cir. 1983).  Under federal law, "[a] release of claims for violations of civil and

12  constitutional rights must be voluntary, deliberate and informed."  *Id.*; *see also Glass v. Rock Island*

13  *Refining Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) (stating that "[a] plaintiff 'may waive his cause of

14  action under Title VII as part of a voluntary settlement,' but 'in determining the effectiveness of any

15  such waiver, a court would have to determine at the outset that the employee's consent to the

16  settlement was voluntary and knowing'"); *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981)

17  (stating that "[a] release of claims under section 1983 is valid only if it results from a decision that is

18  voluntary, deliberate, and informed").  The federal courts have held that a settlement made on court

19  record is binding.  *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136 (9th Cir.2002), citing *Sargent*

20  *v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000) (despite appellant's allegation that he was not bound

21  by a settlement agreement because he had not signed it, "it is well-established that an oral agreement

22  is binding on the parties, particularly when the terms are memorialized into record").

23        In the papers that she has filed with the Court, Ms. Evans essentially claims that her release

24  of claims and agreement to settle the case on the terms stated before Judge Zimmerman was neither

25  voluntary nor informed.  More specifically, Ms. Evans claims that her release of claims and

26  agreement were involuntary because she was pressured to settle by Judge Zimmerman and that her

27  release was not informed because she did not understand what the phrase dismiss "with prejudice"

28  means.  Ms. Evans further argues that the settlement agreement cannot be enforced because it is an

1  illegal contract and because Judge Zimmerman supervised the settlement negotiations without ever

2  having read her settlement conference statement.

3  A.     Voluntary

4         While a showing of involuntariness may nullify an otherwise enforceable settlement

5  agreement and release, the showing must be substantial.  In *Jones*, the plaintiff was beaten by prison

6  guards before signing a release in exchange for $500.  More specifically, the plaintiff was beaten

7  and mistreated in county jail and then held in a special segregation facility for nineteen days before

8  signing the release.  *See id.* at 1202.  It was the physical abuse suffered by the plaintiff "culminated

9  in a waiver of [his] claim."  648 F.2d at 1203 n.1.  The court also noted Jones was obstructed from

10  speaking to his lawyer by prison guards.  When he did speak to his lawyer, it was only briefly.  He

11  was charged with a crime with a possible sentence of 20 years.  It was not clear that Jones

12  understood which claims he was releasing.  Jones accepted the settlement in part to avoid trouble

13  with the authorities.  648 F.2d at 1204.

14         In the instant case, Ms. Evans claims Judge Zimmerman improperly coerced her into the

15  settlement by giving her only 15 minutes to decide whether to settle the case.  *See* Mot. at 4.  There

16  is no evidence, however, to support this claim.  Ms. Evans has not, for example, submitted a

17  declaration under penalty of perjury stating that Judge Zimmerman gave her only 15 minutes to

18  decide.  Indeed, the only evidence before the Court is that settlement negotiations lasted two hours,

19  which is not an insignificant amount of time.  *See* Charbonneau Decl. ¶ 3.  *See* Docket No. 28 (civil

20  minute order).

21         Even if the Court were to credit Ms. Evans's claim that she was given only 15 minutes to

22  make a decision, it would not conclude that Ms. Evans's decision to settle was thereby involuntary.

23  In determining whether a release was voluntary, a court must consider both the "subjective and

24  objective aspects," *Jones*, 648 F.2d at 1203.  In *Jones*, there were "objective indications of coercive

25  pressures."  *Id.* at 1204.

26         The situation in the instant case is far removed from that in *Jones*.  Here, there are no

27  objective indications of any coercive pressures on Ms. Evans.  She does not contend she was

28  physically mistreated.  She merely cites time pressure of having 15 minutes to respond to the

**United States District Court**
For the Northern District of California

1    settlement offer.  Even if true, she could have simply rejected the settlement if she was not ready to

2    make a decision within the allotted time.  There is no evidence that rejecting the settlement could

3    have or would have adversely affected her ability to proceed with the merits of the case, which was

4    being handled by this Court, not Judge Zimmerman.  Settlement negotiations are confidential.  ADR

5    Local Rule 7-5; Federal Rule of Evidence 408.  Moreover, if Ms. Evans was not prepared to make a

6    decision within 15 minutes, she could have asked for more time.  There is no evidence that she asked

7    for such relief or that she was refused such relief.  Finally, the transcript reveals that Judge

8    Zimmerman carefully described the terms of the settlement and gave Ms. Evans ample opportunity

9    to seek clarification, amend, or reject the settlement.  The transcript bears no evidence of coercion.

10   In short, there is no objective indication of involuntariness.

11          Nor is there any indication of subjective involuntariness.  In *Schneckloth v. Bustamonte*, 412

12   U.S. 218, 226 (1973), cited in *Jones*, the Court held that voluntariness of consent to a search

13   depends on the totality of the circumstances and including such subjective factors as "the youth of

14   the accused or his low intelligence."  *See also United States v. Huynh*, 60 F.3d 1386, 1388 (9th Cir.

15   1995) (where a *Miranda* waiver is at issue, "[a] defendant's subjective characteristics are relevant to

16   the voluntariness inquiry when there is evidence of psychological coercion, because such personal

17   sensitivities may 'render[] him more susceptible to subtle forms of coercion'").

18          In the case at bar, there is no indication Ms. Evans was vulnerable to coercion.  She is not a

19   minor.  She is well educated.  She has a marriage family therapist license as well as a Master of Arts

20   in Counseling Psychology from Lesley College.  Ex. F.  In addition, her actions in this case

21   demonstrate she was not one who might easily be susceptible to coercion.  Significantly, she

22   affirmatively negotiated certain terms of the settlement on the record, including how the settlement

23   documents would be received (*i.e.*, by bicycle messenger) and what information AARS would be

24   allowed to give to her prospective future employers.  Ms. Evans also represented herself without the

25   assistance of an attorney in drafting numerous pleadings, including: Plaintiff's "Complaint,"

26   "Plaintiff's Motion to Set Aside Judgment on the Record," and "Plaintiff's Response To Defendant's

27   Motion to Enforce Settlement."  Ms. Evans also conceded she has been involved in other litigation.

28

**United States District Court**
For the Northern District of California

1    Accordingly, as there is neither an objective nor subjective basis to find Ms. Evans's

2    acceptance of the settlement was involuntary, the Court will not set aside the settlement agreement

3    on the basis of involuntariness.

4    B.    Informed

5    Ms. Evans argues that, even if her agreement to settle was voluntarily made, it was still

6    uninformed and therefore should not be enforced.  More specifically, Ms. Evans claims that she was

7    not informed because she lacked understanding as to what the phrase "with prejudice" means.  This

8    assertion is without a factual basis.  As is clear from the record, Judge Zimmerman provided an

9    explanation as to what "with prejudice" means.  He informed Ms. Evans that "[b]asically, that's

10   going to require you, Ms. Evans, to give up the claims that you have against [AARS]."

11   Charbonneau Decl., Ex. A (Tr. at 2).  Moreover, after stating such, Judge Zimmerman specifically

12   asked Ms. Evans if she needed any clarifications or had any questions about the settlement and

13   further whether she understood the terms of settlement.  *See* Charbonneau Decl., Ex. A (Tr. at 2-3).

14   At no time did Ms. Evans express any confusion or voice any concern that she was not clear as to

15   the meaning of "with prejudice."  In fact, it is telling that, during the placement of the settlement on

16   the record, Ms. Evans stated that she "hope[d] it will become a lesson for everyone to learn about

17   what happened here" and that she could "definitely move on" now.  Charbonneau Decl., Ex. A (Tr.

18   at 3).  Such statements are consistent with an understanding that the case was being resolved with

19   finality.

20   At the hearing, Ms. Evans pressed forward with a new argument as to why her agreement to

21   settle was not informed.  According to Ms. Evans, she was also uninformed because it was her

22   understanding that the settlement covered only the issue of severance pay but did not address her

23   other claims for, *e.g.*, bilingual pay and MFT pay.  In other words, the settlement resolved only part

24   of the case.  As above, this assertion is not supported by the record.  Judge Zimmerman specifically

25   stated to Ms. Evans that she would be "giv[ing] up the claims that you have against [AARS].  *And*

26   *it's all of the claims*, because you've mentioned a lot of things today that have to do with your past

27   employment."  Charbonneau Decl., Ex. A (Tr. at 2) (emphasis added).  *Compare DeFalco v. Oak*

28   *Lawn Pub. Library*, No. 99 CV 021372000 U.S. Dist. LEXIS 2724, at *11 (N.D. Ill. Mar. 1, 2000)

("Although general releases are common, there is not necessarily any ordinary linguistic meaning to the terms 'giving up your claims, your lawsuits' that would have alerted DeFalco that a state law claim separate from his federal law claims would also be included in the release."). Again, Ms. Evans's statements that she thought there had been a "learning lesson" and that she could now move on belie her assertion that she understood the settlement to resolve only part of the case, rather than its entirety.

As a final point, the Court acknowledges Ms. Evans's assertion at the hearing that she would never have settled the case for any sum of money because that would be against her principles. This claim, however, is dubious in light of the e-mail that Ms. Evans sent to counsel for AARS, dated August 23, 2008. While, in the e-mail, Ms. Evans did maintain that, "even if I don't get a penny for this, the principle of the matter is the most important," she also stated that "I will never be accepting such a small settlement of $4,000, on the grounds that I am grossly insulted by the amount and that it is grossly unfair, in proportion to the harm that I have suffered. *[I] will be writing to you the amount that I feel the negotiations need to start at*, after serious attorney consultation." Charbonneau Decl., Ex. D (emphasis added). More importantly, if Ms. Evans would not have settled the case over any sum of money, then she would have rejected outright the $4,000 offer at the time that the settlement was to be placed on the record. Instead, Ms. Evans's concern at that time was that the $4,000 be sent to her via a bicycle messenger so that the payment would not get lost in the mail. *See* Charbonneau Decl., Ex. A (Tr. at 2).

C.    Legality of Contract

Ms. Evans also challenges the enforceability of the settlement agreement on the basis that it is an illegal contract. In her motion, Ms. Evans argues: "It is against the law for Defendant to offer hush money to Plaintiff and it is also against the law, to Plaintiff's understanding, to accept hush money from AARS Company." Mot. at 4. This argument is without merit. Ms. Evans cites no authority to support this contention. Title VII cases involving private defendants are often settled for the payment of money under a condition of confidentiality. In fact, in the instant case, Ms. Evans favored a confidentiality provision because she did not want AARS to be able to comment on

**United States District Court**
For the Northern District of California

1   her employment with the organization (other than to provide prospective employers with basic

2   information such as job title and salary).  *See* Charbonneau Decl., Ex. A (Tr. at 4).

3   D.   <u>Judge Zimmerman's "Judgment"</u>

4        Finally, Ms. Evans appears to contest the enforceability of the settlement agreement on the

5   basis that Judge Zimmerman made a "judgment" on the record even though he had not read her

6   settlement conference statement.  *See* Mot. at 6.  This argument is not persuasive for several reasons.

7   First, there is no evidence in the record that Judge Zimmerman did not review her settlement

8   conference statement.  Similar to above, Ms. Evans has not provided a declaration under penalty of

9   perjury making this claim.  Second, even if Judge Zimmerman had not read her statement prior to

10  the conference, there is nothing to suggest that this made him ill equipped or unable to supervise the

11  settlement negotiations.  Nor is there any evidence that Ms. Evans was not able to convey to Judge

12  Zimmerman orally how she believed she had been wronged by AARS and what relief she thought

13  she was entitled to as a result.  Finally, as a settlement judge, Judge Zimmerman did not make any

14  "judgment" in the case -- *i.e.*, he did not make any ruling on the merits of the case.  His role was

15  simply to assist the parties in negotiating a resolution of the case without the need for a trial on the

16  merits.  Any insinuation that Judge Zimmerman was biased is not only unsubstantiated by any

17  evidence, it would not nullify the settlement absent a finding that Ms. Evans's consent to its terms

18  on the record in open court was involuntary or uninformed.

19  E.   <u>Enforceability as a Matter of State Law</u>

20       It may be contended that to the extent Ms. Evans is seeking to challenge the enforceability of

21  the settlement agreement as a whole, and not just the effect of the release, state rather than federal

22  law applies.  In *Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989), the Ninth Circuit held that

23  construction and enforcement of a settlement is governed by local laws.  ("The construction and

24  enforcement of a settlement agreements are governed by principles of local law which apply to

25  interpretation of contracts generally.) (*Id.* at 759).  While the relationship between this rule in *Jeff D.*

26  and the application of federal law as to release and waivers under *Salmeron* and *Jones* seems

27  unclear, the Court concludes that even under California law, Ms. Evans's challenge is without merit.

28

**United States District Court**
For the Northern District of California

1    California law looks at a settlement agreement as a contract and considers contractual

2    grounds as a basis for rescinding.  "A settlement agreement is treated as a contract and is subject to

3    all contractual requirements."  *Huens v. Tatum*, Cal. App. 4th 259, 264 (1997).  Here the contractual

4    ground for rescission in this case is essentially Ms. Evans's assertion of unilateral mistake -- her

5    mistake as to the meaning of the term dismissed "with prejudice."

6        A "factual mistake by one party to a  contract, or unilateral mistake, affords a ground for

7    rescission in some circumstances."  *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 278 (2001).  A

8    unilateral mistake is a ground for rescission if the non-mistaken party has reason to know of or

9    causes the other party's unilateral mistake.  *Id.* at 281.  In the instant case, Ms. Evans has not alleged

10   that AARS either knew or caused the mistake.  *See* Docket No. 29. The briefs do not allege or

11   suggest that AARS took any action to lure Ms. Evans unlawfully into agreeing with the settlement.

12       Where the non-mistaken defendant has no reason to know of and does not cause the

13   plaintiff's unilateral mistake, the mistaken plaintiff must establish the following facts to obtain

14   rescission of the contract: (1) the [plaintiff] made a mistake regarding a basic assumption upon

15   which the plaintiff made the contract; (2) the mistake has a material effect upon the agreed exchange

16   of performance is adverse to the [plaintiff]; (3) the [plaintiff] does not bear the risk of the mistake;

17   and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable.

18   *See Donovan*, 26 Cal. 4th at 282.

19       These criteria are not met here.  At the very least, Ms. Evans fails to satisfy the fourth prong

20   -- that the terms of the settlement agreement are unconscionable.

21       This was not a contract of adhesion.  *See Perdue v. Crocker National Bank*, 38 Cal.3d 913,

22   925 (1985).  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807 (1981).  The settlement agreement

23   between Ms. Evans and AARS is not a standardized contract.  Rather, it was the result of several

24   hours of negotiation, during which time Ms. Evans successfully negotiated certain terms be included

25   with the agreement (*e.g.*, the limited information AARS is allowed to release to Ms. Evan's

26   prospective employers).

27       Nor was there procedural or substantive unconscionability.  *A&M Produce Co. v. FMC*

28   *Corp.*, 135 Cal. App. 3d 473 (1982).  There was no "oppression" and "surprise" required for

procedural unconscionability.  *See A&M Produce*, 135 Cal. App. 3d at 485-86.  Judge Zimmerman clearly explained the terms of the settlement as noted above, indicating the settlement entailed to release of all claims.  The settlement was not one-sided, unreasonable, or without justification.  *See A&M Product*, 135 Cal. App. 3d at 485-87.  In exchange for dismissal, Ms. Evans was to receive consideration in terms of money and restrictions on job references by AARS.  Ms. Evans has not shown the consideration was unconscionably inadequate when measured against litigation risks she confronted.

### III.   CONCLUSION

For the foregoing reasons, Ms. Evans's motion to set aside the settlement is denied and AARS's motion to enforce the settlement is granted.  Accordingly, in accordance with the settlement agreement reached herein, this case is dismissed with prejudice.

This order disposes of Docket Nos. 29, 32 and 33.


IT IS SO ORDERED.


Dated:  December 19, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

1

2

3

4

5                                  UNITED STATES DISTRICT COURT

6                                NORTHERN DISTRICT OF CALIFORNIA

7

8    JANE ROCIO EVANS,                                    No. C-08-0944 EMC

9              Plaintiff,

10         v.
                                                   **CERTIFICATE OF SERVICE**
11   ASIAN AMERICAN RECOVERY
     SERVICES,
12
               Defendants.
13   _____/

14

15         I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern

16   District of California.  On the below date, I served a true and correct copy of the attached, by placing

17   said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing

18   said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery

19   receptacle located in the Office of the Clerk.

20

21   JANE ROCIO EVANS                        *ALL OTHER COUNSEL SERVED VIA*
     P.O. Box 424886                         *ELECTRONIC FILING ("E-FILING")*
22   San Francisco, CA  94142

23

24   Dated:  December 19, 2008               RICHARD W. WIEKING, CLERK

25

26                                           By:  _____/s/_____
                                                   Leni Doyle
27                                                 Deputy Clerk

28